

# PHILADELPHIA
## INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
610.617.7900 • Fax 610.617.7940 • PHLY.com

May 7th, 2012

To Whom It May Concern:

Philadelphia Indemnity Insurance Company policy (#PHSD250284), effective April 23th, 2007 to April 23th, 2008, was issued to **LSI Lowery Systems, Inc. dba LSI Teamcentric Technologies, Inc.; The Intergrated Business Solutions Group dba IBIS** of Fenton, MO.

I, Howard Goldstein, do hereby certify that this is a true and correct copy of the above captioned policy.

_____

Howard E. Goldstein
Assistant Vice President, Specialty Lines

SWORN AND SUBSCRIBED to before me on this Seventh day of May, 2012:

_____
(Notary Public)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Linda M. Wentzel, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Nov. 7, 2013
Member, Pennsylvania Association of Notaries

(My commission expires)

Philadelphia Consolidated Holding Corp. • Philadelphia Indemnity Insurance Company • Philadelphia Insurance Company • Maguire Insurance Agency, Inc.

 **Philadelphia Indemnity Insurance Company**

(A Stock Company founded in 1927)
One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
1-800-759-4961

# Commercial Lines Policy

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

BJP-190-1 (12-98)

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President

Secretary



# Loss Control Notice

Welcome to PIC Loss Control Services.   PIC is familiar with the unique loss control programming needs of your organization and has achieved superior results in this area.  We are committed to delivering quality and timely loss prevention services and risk control products to your organization. Customer satisfaction through the delivery of these quality professional products to achieve measurable risk improvement results is our goal.  We know the fulfillment of the loss control commitment is not complete until we deliver upon our promises.

Our product specific service capabilities follow on the next few pages. They include a multi-faceted approach to risk management covering safety program development, site audits, and training (including a new interactive web-based training).  We offer a wide range of products and value-added services at no cost to help you achieve your risk management goals.

Please take a moment to register for our website @ *www.losscontrol.com* to gain full access to these resources. Please assign yourself your own username and password.  Your registration request will be processed within two business days.

We look forward to helping to make your insurance program a success.  We are standing by if you have any questions or if we may be of further assistance. Please contact us at:

**Jeffrey M. Collins, AVP & Director**
**Loss Control Department**
**Phone: 610-617-7717**
**E-Mail: jcollins@phlyins.com**


**Mark A. Konchan, Manager**
**Loss Control Department**
**Phone: 610-538-2967**
**E-Mail: mkonchan@phlyins.com**

# Access PHLY Loss Control Services

**Loss Control Services**

***Innovative* Service Producing *Optimum* Results**

Missing the Last Piece to Your Risk Management Solution?

Our custom Training Services will give you many benefits.

The possibilities are endless with AccessPhly Loss Control.



**Downloads**

## Philadelphia Insurance Companies (PIC) AccessPHLY Loss Control Services

**About Loss Control Services**                    more...

- Our Motto
- Our Mission

**Contact Information**                    more...

**Risk Management Resources**                    more...

- DuraFile "Your Online Safety Deposit Box"
- IntelliCorp Records, Inc (Employment Background Screening and MVR Checks)
- Non-Profit Risk Management Center
- PureSafety (online driver training course)
- SafetyFirst (Fleet Monitoring Program)
- WEMED Loss Assistance Hotline
- AGOSNET: web-enabled EPLI (Employment Practices Liability Insurance) Risk Management Services

**Proprietary Risk Management Services**                    more...





- Monthly E-Brochures
- Large Account Service Capabilities
- Loss Trend Analysis / Risk Management Information System
- Responding to Recommendations Via www. losscontrol.com

**"Outside the Box": ePIC Loss Control Services (Unbundled Risk Management Services)**     more...

**Contact Information**     more...

# About Loss Control Services     back to top..

**OUR MOTTO: *"Innovative Solutions Producing Optimum Results":*** This mantra reflects our commitment to utilize innovative products and solutions to help our customers achieve measurable results. Customer satisfaction through the delivery of these quality professional products is our goal. We know the fulfillment of our loss control commitment is not complete until we deliver upon our promises.

**OUR MISSION:** We welcome the opportunity to demonstrate how we can tailor a risk management program suitable to our customer's needs. We are committed to providing our customers with improved communications, quicker implementation of loss control servicing initiatives, and specific benchmarking goals that help us quantify the true value of our services.

Our product specific resources, alliances and service capabilities are highlighted in this E-Brochure. They include a multi-faceted approach to risk management covering safety program development, site audits, and training (including a new interactive web-based training). We offer a wide range of products and value-added services at financial terms to be agreed upon to help you achieve your risk management goals. Included within this E-Brochure is also a quick synopsis of two proprietary servicing capabilities (large account servicing and loss trend analysis).

In order to gain full access to these resources and others, please take a moment to register on our website @ www.losscontrol.com.

You must assign yourself a username and password.  Your registration request will be processed within two business days.

# Risk Management Resources

back to top..

These services are pre-negotiated arrangements with "Best in Class" vendors and provide solutions to your human resources and risk management needs. PIC does not receive any revenue from these alliances.

## DuraFile:  "Your Online Safety Deposit Box"

back to top..

 

Natural Disasters **Will** Happen – Have You and Your Clients Prepared?

Philadelphia Insurance Companies has created a partnership with DuraFile to provide an innovative loss control tool for our insurance agents and our clients. DuraFile is a secure online safe deposit box for people who are serious about protecting their important documents in case of disaster. Fully encrypted and secure, DuraFile provides members 24/7 access to vital papers from any web-based computer. Insurance policies, home inventory, escrow documents, deeds, birth certificates, photos – any and all kinds of documents can be easily and securely organized and protected in your own personal online vault.

The PIC / DuraFile partnership is a win-win opportunity.  As a PIC agent or customer, you receive:

- 25% off the retail price for all DuraFile products and services (DuraFile retail price is $96/year ($8/month) for a one-year membership and $249 for a 3-year membership. PIC agents and insureds receive a 25% discount on single/small quantity memberships – with a larger price discount on larger volume).
- Access to your online safe deposit box to secure insurance policies, loan documents, home closing files, medical records, trust deeds, passports, or any business documents accessible 24 hours a day anywhere in the world.
- The ability to provide leading edge consumer protection to your clients.
- A solution to decrease document storage space and increase employee efficiency.

**Marketing Presentation:**
DuraFile PHLY Marketing Presentation

**E-Brochure:**
<u>DuraFile "Your Online Safety Deposit Box"</u>

**E-Brochure Landing Page**:
<u>http://www.durafile.com/phly.html</u>


**IntelliCorp Records, Inc.**                                     <u>back to top..</u>

  

**IntelliCorp Records, Inc.** - IntelliCorp Records, Inc., an affiliate of the Insurance Services Offices (ISO), is a provider of innovative decision-support products for employment and background checks and offers the best screening tools in the industry. IntelliCorp offers a wide range of innovative pre-employment verification and screening services, including criminal background checks, previous employment and education references, MVRs and more.

As a PIC client, you receive the value-added benefit of reduced pricing (<u>click here to view our reduced pricing and coverage guide</u>) and access to the largest criminal history database available. IntelliCorp provides customers with industry leading information solutions enabling them to make better decisions. No other provider gets you closer to the comprehensive, timely and accurate data you need. Your organization will avoid costly hiring and recruiting mistakes and limit exposure to risk litigation. You can access IntelliCorp's employment solutions by visiting <u>www. losscontrol.com</u>.

Please make certain you have your Policy Number available. Some of the information available includes:

| Workers compensation records | Nationwide criminal records searches | Single-county court searches |
|---|---|---|
| Education verification | Criminal Super Search - 50 states of criminal record data | Federal criminal records search in all U.S. district courts |
| Employment verification | Arrest and booking records | Motor vehicle records - all 50 states |
| Personnel assessments | Statewide criminal searches | Social Security number verification |
| Drug testing | Civil court records | Credit reports |

**Website: (Getting started):**

1. Click on "Total Solution Pre-Employment Verification, Screening Services, and Motor Vehicle Record Checks" located on the front page of www. losscontrol.com.
2. Enter promotion code PHLY
3. As part of the activation process, you will need to submit a photocopy of one of these documents:
   - Business license
   - Vendor license
   - Federal identification number (on a legal/government document)
4. The system will invoice you when you register. You can pay by monthly invoice or credit card. If you choose monthly invoicing, you must complete our Credit Authorization Form. You can submit the form on-line during the registration process or fax it to 440-505-0261. IntelliCorp submits all invoices through e-mail and will invoice you on the first business day after the end of the month. If you pay by credit card, you will receive an e-mail statement.

**Marketing Presentation:**
IntelliCorp Marketing Presentation

**E-Brochure:**
IntelliCorp Records, Inc.


**Nonprofit Risk Management Center**                                    back to top..



**Nonprofit Risk Management Center** - The Center offers risk management help specifically designed to address the needs of nonprofit organizations. FREE Workplace Safety Tool Kit, Business Continuity Planning course, *Pillars of Accountability*, tutorials, articles, e-news, risk management glossary and other downloadable resources. Affordable resources include online training, monthly Web Seminars, web-based risk assessment tool (Nonprofit CARES) and *My Risk Management Plan*. All of these resources can be accessed through www.losscontrol. com.


**Resources include the following:**
Workplace Safety is No Accident
Business Continuity Planning Course

Pillars of Accountability
Risk Management Tutorials
Articles
E-News
Glossary
State Liability Laws for Charitable Organizations and Volunteers
Risk Management Classroom
Web Seminars
My Risk Management Plan
Nonprofit CARES

**PureSafety (online driver training course)**                    <u>back to top..</u>



**PureSafety** - This **interactive online defensive driver training course** is designed to teach the driver how to minimize the risks involved with driving any type of vehicle, and how to avoid dangerous driving situations and improper driving techniques. These are skills that everyone should know master, both on and off the job. This can be accessed through www.losscontrol.com at no cost to PIC policyholders. A final exam and completion certificate are also available online.

**SafetyFirst (Fleet Monitoring Program)**                    <u>back to top..</u>



**"A pro-active approach to monitoring your organization's fleet exposures."**

**Named "Best in Class" for reducing automobile collisions and their related costs.**

**Driver Monitoring Program** - SafetyFirst Systems, LLC ("SafetyFirst") provides a vehicle driver monitoring system uniquely geared to the transportation industry. SafetyFirst's primary product is a driver performance feedback service that highlights risk-taking behaviors. Independent studies by major insurance companies have shown a 20-65% reduction in collisions when information developed by the program is used to coach drivers on their performance and influence a behavior change. "1-800-550-SAFE" decals are placed on rear of commercial vehicles (vans, pickups, delivery trucks, tractor trailers, etc.) that encourage motorists to report risk-taking behaviors. Calls are received at staffed, 'round the clock (24/7/365), dedicated call center for documentation and reporting to the client for management review.

**Subject to negotiated terms, this program provides:**

- Sales and Enrollment by Safety First staff
- Implementation and support materials
- Coaching tools for managers
- Countermeasure fact sheets for drivers
- Report Analysis (trend spotting) by Safety First specialists
- Real time data at their website (ad hoc reporting and preformatted exception reports)
- AND, Monthly Driver Training Package delivered by email

**Safety First - FIVE Reasons Why!!**

- **Saves Lives** - Reduces accidents because drivers know they are operating in a supervised environment. Confirmed by several insurance carrier studies.
- **Retains Employees** - Positive recognition.
- **Saves Money** - Studies by major insurance companies reported: if properly utilized, driver-monitoring programs lower accident rates.
- **Enhances Clients Public Image** - Shows concern for public safety, letting the driving public know you care when you make it easy to report driving performance.
- **Promotes job stability and security** - Shows your organization's investment in their career.

**Website:**
http://www.safetyfirst.com/

**Marketing Presentation:**

Safety First Marketing Presentation.ppt

**Marketing Brochure:**
Safety First Brochure - Client Draft.doc
A Drivers Guide To Safety First
Reviewing Safety First Management Reports
Motorist Observation Reports (MOR)
Handling Motorist Observation Reports

**Video Presentation:**
Safety First Television Video

**WEMED Loss Assistance Hotline**                                          back to top..

 

**WEMED Loss Assistance Hotline** - Philadelphia Insurance Companies (PIC) has partnered with nationally recognized law firm Wilson, Elser, Moskowitz, Edelman and Dicker LLP (WEMED) to offer a Loss Assistance Hotline. This hotline provides policyholders with 2 free hours of legal consultation per inquiry with knowledgeable attorneys on any matter that could potentially result in a claim under your PIC policy. This Loss Assistance Hotline is NOT a loss reporting hotline. Please visit www.losscontrol.com for full details including contact information.

**You can also contact WEMED online to inquire about loss assistance by visiting the following Website:**
WEMED Loss Assistance Hotline

**Technical Bulletin:**
WEMED Loss Assistance Hotline.doc

**Marketing Presentation:**
Loss Assistance Hotline Marketing Presentation.ppt

**AGOSNET: web-enabled EPLI (Employment Practices Liability Insurance) Risk Management Services**                                          back to top..



AGOSNET - LOGO

**Benefits of the PIC AGOSNET Program:**

**TRAINING**

- **Weekly Manager's Training Bulletins**
- **SmartTrain.com® - web-based training courses** enable you to keep your managers and supervisors trained on the most up-to-date and relevant information. Courses provided are:

  ○ **Abuse Prevention** — This program covers five key areas: (1) What is child sexual abuse, (2) the damage caused by child sexual abuse, (3) the warning signs of child sexual abuse and of abusers, (4) how to appropriately respond to suspected child sexual abuse, and (5) what caring adults can do to prevent child sexual abuse in their workplaces, homes, and communities.

  ○ **Sexual Harassment** — This module explores a common and devastating problem for organizations—sexual harassment. Topics include the personal and economic impacts of sexual harassment; the legal duties of managers and supervisors; what sexual harassment is and isn't; how to spot and prevent potential sexual harassment, how to defend your organization with effective reporting systems, the importance of investigations, and more.

  ○ **Discrimination** — This module discusses the prohibitions against discrimination on the basis of race, color, national origin, religion, disability, sex, and age. It explains what discrimination is; how even well-meaning conduct can be interpreted as discriminatory; the personal and economic impacts of discrimination; the legal duties of managers and supervisors; how to spot and prevent potential discrimination; how to defend your organization with effective reporting systems; the importance of investigations, and more.

  ○ **Smart Hiring** — More now than any other time prior to this century, organizations looking to hire are presented with a wide range of candidates. There are numerous economic, social, and cultural changes that are having, and will continue to have, a profound impact on the hiring process. This module is designed to reinforce the importance of fair, lawful, and consistent hiring practices. Such practices will help

organizations mitigate the unnecessary exposures to liability created by incorrect, improper, and inconsistent hiring procedures ... and, in the end, to promote successful new hires.

## HR & RISK MANAGEMENT TOOLS & RESOURCES

- An online **library of articles** - management briefs on a range of workplace related topics for risk managers, human resources professionals, and other upper-level management
- Best Practices Knowledge Base - a **searchable archive of real-life workplace scenarios** that provides insight into the proper management of workplace-related risks and exposures
- **Self-Assessments** - assist in evaluating your company's risk exposure levels and provide training to shore up your defense
- Model Employment **Handbook**
- Model Workplace **Policies and Forms**
- **Links** to hundreds of helpful workplace-related websites
- **Communication Center** - electronic access to other AGOSNET™ users within your organization

Access to these services are available through www.losscontrol.com.

## LOOKING FOR OPTIONS?

Additional AGOS resources, which are shown below, can be added to your PIC AGOSNET with preferred PIC pricing.

- TRAC™ (Teamwork, Respect, Awareness, and Communication) Web-based training for all employees
- SmartTrain.com™ web-based training for Managers and Supervisors
- Family and Medical Leave Act (FMLA)
- Workers' Compensation Fraud & Retaliation
- Wrongful Termination
- Workplace Violence
- Unsafe Acts
- Workplace Theft
- Ethics
- Diversity
- SmartTrain.com™ web-based training for Human Resource Managers and Senior Managers
- Hotlines
- Smarter Adults - Safer Children™ (SASC)

For more information, contact AGOS directly at 800-205-5262 and identify yourself as a Philadelphia Insurance Companies insured.

**E-Brochure:**
AGOSNET Employment Practice Liability Risk Management E-Brochure

**Marketing Presentation:**
AGOSNET Marketing Presentation - Introducing AGOSNET

# Proprietary Risk Management Services

back to top..

## I. Monthly E-Brochures

As a registered user to the www.losscontrol.com website you are eligible to receive our monthly loss control E-Brochures: (see below list of some archived E-Brochures)

Below is a sampling of some **Archived E-Brochures**:

Cold Weather Freeze-Up Precautions
Driver Eligibility Criteria
IntelliCorp Records, Inc.
HIPPA
Sexual Harassment in the Worklplace
Employment Background Checks
Employee Discipline
Crisis Management and Emergency Response
Windstorm and Rainstorm Emergency Checklists
Disaster Support - Temporary Shelters
Slips and falls
Transporting People with Special Needs and Wheelchair Securement
DuraFile: Your Online Safety Deposit Box
De-escalation
Schools - Security Alert!!!

## II. Large Account Service Capabilities

Effective communication between PHLY Associates (Marketing, Underwriting, Claims, and Loss Control), the policyholder and the producer is the key ingredient to the development and implementation of servicing a large account.

**Ten Reasons Why:** Through proper initiation, selling, coordination, analysis, monitoring and measuring, and the **Ten Reasons Why**, PHLY will demonstrate once again why we are the superior market for niche large accounts.

1. **LOSS REDUCTION:** Improved loss ratio performance
2. **ACCOUNT SELECTION:** Involvement in prospective stage allows us to fully evaluate exposures and controls and management practices
3. **ACCOUNT RETENTION:** service plan will increase our presence to our customers and improve loyalty
4. **BENCHMARKED APPROACH TO QUANTIFY LOSS CONTROL**
5. **ENHANCED CUSTOMIZED SERVICE:** Full availability to our innovative loss control resources with specialized service capabilities. Annual stewardship meetings conducted prior to renewal
6. **LOSS TREND ANALYSIS:** Automated proprietary loss trend analysis capabilities
7. **CULTIVATE LONG-TERM RELATIONSHIPS**
8. **IMPROVED COMMUNICATION:**
   o INTERNALLY WITHIN PHLY DEPARTMENTS
   o EXTERNALLY WITH CUSTOMERS AND AGENTS
9. **IMPROVED AGENT SATISFACTION:** Better relationship between Agent, customer and PIC
10. **A PLETHORA OF RESOURCES** – Our technology provides easy access to Loss Control information, links, E-Brochures, etc

**Defining Benchmarking Standards**

Standards of performance will be established. These include Results Standards and Activity Standards.

- **Results Standards** – Results will be based on benchmarked historical loss data for each business insurance line of coverage. PIIC will focus on achieving agreed upon loss reduction goals with the insured. Where the client has exceptional loss experience, PIIC will focus on Activity Standards which include "Interest-Sustaining Activities" and program reviews as a partnership to help maintain the experience.
- **Activity Standards** – This will be measured by completing agreed upon specific location surveys, training courses and providing program support materials.

Each goal should be based off actual loss trends and must be developed with impact in mind – including exposure reduction, frequency reduction, severity reduction, and/or customer retention. If the account has been loss free, then

potential causes of loss (controlled exposures) should be addressed.

## III. Loss Trend Analysis / Risk Management Information System

- Ability to analyze claims data through a windows™-based software system.
- Ability to utilize claims data from any length or time period.
- Ability to provide extensive loss trending data analysis by line of coverage, loss frequency, loss severity, cause of loss, location, reporting time, reporting day, etc.
- Ability to chart and graph loss trend data and import into a PowerPoint™-presentation.
- Ability to benchmark risk's loss data against product loss data.

For additional value-added safety information, please log on to our loss control website and register at: www.losscontrol.com

## IV. Responding to Loss Control Recommendations via **www.losscontrol.com**



Philadelphia Insurance Company's Loss Control department has streamlined the recommendation response process by offering our policyholders and agents a new and exciting feature to respond to our recommendation letter(s) online, via our loss control website (www.losscontrol.com).

In order to take advantage of this exciting new feature, you must be a registered user to www.losscontrol.com

If you are not a registered user, you will need to do the following:

- Log into www.losscontrol.com
- Select the register button
- Fill in the required information
- Select the submit button
  - You will receive a general email stating we have received your registration application
- LC personnel will sign your username and password up to our website

- o You will receive an email advising that your username and password have been set-up
- o You may begin using your PIIC website

Once you are registered to our website or if already a current customer, you will then need to log into www.losscontrol.com with your username and password and select the following button.

**E-Brochure:**
Respond to Recommendations via losscontrol.com

## "Outside the Box"

back to top..



**ePIC Loss Control Services (Unbundled (For-Fee) Risk Management Services Available)**

***For Policyholders:***

Do you have a need for "Fee-Based" loss control services to fill that last missing piece in you Risk Management program? ePIC Loss Control is your total solution to fill the void where loss control services are not included as part of your insurance policy, or are beyond the scope of what was provided as part of the original insurance agreement.



1. ***ePIC Loss Control Services'*** customized loss control surveys, risk management programs and seminar training modules are specific to your operation providing maximum impact to the organization.
2. Since you are all ready an established policyholder, ePIC's partnership and team approach understands the individualized attention your organization demands in developing cost effective solutions to reduce your exposure to loss.

3. *ePIC Loss Control Services'* offers a preferred fee structure arrangement that is only offered to Philadelphia Insurance Company policyholders.

**For Agents and Brokers:**



Philadelphia Insurance Companies (PIC) understands that not all accounts meet PIC's strict underwriting criteria and guidelines necessary to become PIC policyholders. In this instance, PIC has created a new loss control and risk management profit center called **ePIC Loss Control Services**. PIC would like to provide its preferred Agents and Brokers with an opportunity to allow us to become more knowledgeable with your account so your client and PIC can potentially have a future relationship. **ePIC Loss Control Services** is that opportunity.

Contracting loss control service work through **ePIC Loss Control Services** will have two prominent benefits:

1. We will set the foundation for loss frequency and severity reduction through the implementation of **ePIC Loss Control Services'** customized risk management programs and training modules.
2. We will create a team approach to risk management by enabling us to become more knowledgeable about an account's risk management philosophy, safety practices and procedures.

**ePIC Loss Control Services** would also like to be your primary choice for risk management services for accounts that do not quite fit into the PIC underwriting appetite. We will provide the same quality customized loss control services for these clients as well.

Please take the time to visit our new website and review the attached marketing brochures. We look forward to servicing your client's risk management needs.

**Marketing Brochure and Information:** (call for specific pricing)
ePIC Online Interactive Defensive Driver Training
ePIC Loss Control Services Brochure
ePIC LCS -  Program Highlight Sheet
ePIC LCS Loss Control Programs
ePIC LCS Loss Control Training

# Contact Information                                   back to top..

**HOME OFFICE CONTACTS**

**Jeffrey M. Collins, ARM**
**Vice President**
Home Office – Bala Cynwyd, PA
Phone: 800-873-4552 ext. 7717
E-Mail: jcollins@phlyins.com

**Mark A. Konchan, ARM CSP**
**Loss Control Manager**
**(Mid-Atlantic Region, Southeast, Florida Regions)**
Home Office – Bala Cynwyd, PA
Phone: 800-873-4552 ext. 2967
E-Mail: mkonchan@phlyins.com

**Joe Sweeney, Loss Control Consultant**
Home Office - Bala Cynwyd, PA
Phone: 800-873-4552 ext. 5876
E-Mail: jsweeney@phlyins.com

**REGIONAL OFFICE CONTACTS**

**Brett Hines, Regional Loss Control Manager**
**(Central, Southwest Regions)**
Independence, MO
Phone: 877-439-7459 Ext. 3267
E-Mail: bhines@phlyins.com

**Leslie Dugan, Regional Loss Control Manager**
**(Sunbelt, West, Northwest, Rocky Mountain Regions)**
Mission Viejo, CA
Phone: (800) 994-4121 ext. 236
E-Mail: ldugan@phlyins.com

**Ron Quattrochi, Sr. Loss Control Consultant**
**(Northeast, Metro Regions)**
Stoughton, MA
Phone: 888-292-3881 ext. 268
E-Mail: rquattrochi@phlyins.com

**George Kalule, Loss Control Consultant**
**(North Central, Ohio Valley Regions)**
Naperville, IL
Phone: 800-547-9967 ext. 2256
E-Mail: gkalule@phlyins.com

IMPORTANT NOTICE - The information and suggestions presented by Philadelphia Indemnity Insurance Company in this E-Brochure is for your consideration in your loss prevention efforts. They are not intended to be complete or definitive in identifying all hazards associated with your business, preventing workplace accidents, or complying with any safety related, or other, laws or regulations. You are encouraged to alter them to fit the specific hazards of your business and to have your legal counsel review all of your plans and company policies.

LossControl.com     800.873.4552 ext 7717

## POLICYHOLDER NOTICE (LOSS ASSISTANCE HOTLINE)

We are pleased to enclose an original copy of your policy.  Please take a moment to review the policy to ensure it meets your needs.

Please feel free to contact our local sales representatives or our customer service unit at 877-GET-PHLY, if you need further assistance.

As a free loss control benefit to our policyholders, Philadelphia Insurance Companies (PIC) has partnered with a nationally recognized law firm Wilson, Elser, Moskowitz, Edelman and Dicker LLP (WEMED), to offer a toll-free **Loss Assistance Hotline**.  The toll-free loss assistance hotline telephone number is **1-877-742-2201**.  You can also contact a WEMED attorney online at either of the following internet addresses: **http://www.wemed.com/pic/ or <http://www.losscontrol.com>** . This hotline provides policyholders 2 free hours of legal consultation with a knowledgeable attorney on any matter that could potentially result in a claim under your PIC policy.  This loss assistance hotline is **NOT** a loss reporting hotline.  To report a claim, read the claim reporting instructions in your Policy, or ask your agent.  If you have questions concerning the loss assistance hotline, please contact us at 1-800-759-4961 x7717.

The Philadelphia Insurance Companies thanks you for choosing us to meet your insurance needs.


Sincerely,


Philadelphia Insurance Companies



# Philadelphia Insurance Companies
One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004

Philadelphia Indemnity Insurance Company

## COMMON POLICY DECLARATIONS

**Policy Number:** PHSD250284

**Named Insured and Mailing Address:**
LSI Lowery Systems, Inc. dba LSI Teamcen
The Intergrated Business Solutions Group
1329 Horan Dr
Fenton, MO 63026-1939

**Producer:** 5167
GALLAHER-TANGORA-RODES INSURANCE
P.O. BOX 798
MEXICO, MO,  65265

**Policy Period From:** 04/23/2007   **To:** 04/23/2008     at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Computer Bureaus/Consultants

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| Miscellaneous Professional | 6,119.00 |
| **Total** | **$   6,119.00** |

FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE
**Refer To Forms Schedule**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

_____

Countersignature Date

Authorized Representative

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHSD250284

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 1002 | Policyholder Notice (Loss Assistance Hotline) |
| Common Policy Dec | 0100 | Common Policy Declarations |
| PP 0701 | 0701 | Privacy Policy Notice |
| IL0990 | 0703 | MO - Discl Pursuant to Terrorism Risk Ins Act of 2002 |

PI-PLSP-1 (08/2004)



# Philadelphia Insurance Companies

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania  19004
**610.617.7900    Fax: 610.617.7940**

## *PROFESSIONAL LIABILITY FOR SPECIFIED PROFESSIONS*

☒ **Philadelphia Indemnity Insurance Company**      ☐ **Philadelphia Insurance Company**

### DECLARATIONS

**Policy Number:** PHSD250284

**NOTICE:  THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ THIS POLICY CAREFULLY.  THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR INVESTIGATION AND LEGAL COSTS. FURTHER NOTE THAT AMOUNTS INCURRED FOR SUCH COST SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT**

Item    1.    **Named Insured** and Address:

LSI Lowery Systems, Inc. dba LSI Teamcen
The Intergrated Business Solutions Group
1329 Horan Dr
Fenton, MO 63026-1939

Item    1a.    **Agent Name** and Address:

GALLAHER-TANGORA-RODES INSURANCE
P.O. BOX 798
MEXICO, MO,  65265

Item    2.    **Policy Period:**  From: 04/23/2007 To: 04/23/2008
(12:01 A.M. Standard Time)

Item    3.    Premium:        $        6,119.00

Item    4.    Limits of Liability:  (A) $      1,000,000      each **Claim**, including **Claims Expense**

(B) $      1,000,000      Annual Aggregate, including **Claims Expense**

Item    5.    Deductible:        $        7,500      Deductible per **Claim**

Item    6.    Retroactive Date: 04/01/2005

Item    7.    Additional Premium for Supplemental Extended Reporting Period: $   4,589.25

Item    8.    **Named Insureds** Profession:
Computer Bureaus/Consultants

PI-PLSP-1 (08/2004)

Endorsements:

By accepting this Policy, the **Insured** agrees that the statements in the application are personal representations, that they shall be deemed material, and that this Policy is issued in reliance upon the truth of such representations.

_____          _____          _____
      Authorized Representative                        Countersignature                       Countersignature Date

Philadelphia Indemnity Insurance Company

Form Schedule – Miscellaneous Professional Liability

**Policy Number:** PHSD250284

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| PI-PLSP-1 | 0804 | Specified Professions Policy Declarations Page |
| PI-BELL-1 | 0406 | Bell Endorsement |
| PI-PLSP-2 | 0804 | Professional Liability for Specified Professions |
| PI-PLSP-10 | 0497 | Nuclear Energy Liability Exclusion |
| PI-PLSP-16 | 0497 | Pending and/or Prior Litigation Exclusion |
| PI-PLSP-102 | 0497 | Bankruptcy/Insolvency Exclusion |
| PI-PLSP-145 | 0804 | Computer/Technology Consultant Pro-Pak Elite |
| PI-SLD-001 | 0103 | Cap on Losses from Certified Acts of Terrorism |
| PI-ARB-1 MO | 0305 | Binding Arbitration |
| PI-DEF-NOTICE-MO | 0401 | Defense Within Limits |
| PI-Notice-MO | 0401 | Important Notice |
| PI-PLSP-MO-1 | 1004 | Missouri Amendatory Endorsement |

PP-0701 07-01

# PHILADELPHIA INSURANCE COMPANIES

## PRIVACY POLICY NOTICE

Philadelphia Insurance Company & Philadelphia Indemnity Insurance Company

The Philadelphia Insurance Companies values your privacy and we are committed to protecting personal information that we collect during the course of our business relationship.

The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information we collect and how it may be disclosed. This does not reflect a change in the way we do business or handle your information.

### Information We Collect:

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

### Information We Disclose:

We will only disclose the information described above, as permitted by law, to our affiliates and non-affiliated third parties when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker;
- Parties who perform a business, professional or insurance function for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, other insurers, medical care institutions and attorneys who need the information to investigate, defend or settle a claim involving you;
- Insurance regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes.
We do not disclose the personal information of persons who have ceased to be our customers.

### Protection of Information:

The Philadelphia Insurance Companies maintains physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

### How to Contact Us:

Feel free to call or write to us for additional information.

Philadelphia Insurance Companies
One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
(877)-438-7459

POLICY NUMBER: PHSD250284

IL 09 90 07 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# MISSOURI – DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

### SCHEDULE

Terrorism Premium (Certified Acts)     $ Included

Additional information, if any, concerning the terrorism premium:

NOTE: The premium above is for certain losses resulting from certified acts of terrorism as covered pursuant to coverage provisions, limitations and exclusions in this policy. You should read the definition in your policy carefully, but generally speaking, "certified" acts of terrorism are acts of foreign sponsorship that exceed $5 million in aggregate losses to the insurance industry and which are subsequently declared by the U.S. Secretary of the Treasury as a certified terrorist act under the Terrorism Risk Insurance Act. Some losses resulting from certified acts of terrorism are not covered. Coverage for noncertified acts of terrorism may not be provided. A major example of "noncertified" acts of terrorism would be an act of terrorism committed by a domestic group. Read your policy and endorsements carefully.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 90 07 03

© ISO Properties, Inc.,  2003

Page 1 of 1   □

PI-BELL-1 (04/06)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BELL ENDORSEMENT



Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

**I.    SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Insurance or Liability and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| | |
|---|---|
| Identity Theft Expense | $5,000 |
| Terrorism Travel Reimbursement | $5,000 |
| Emergency Real Estate Consulting Fee | $5,000 |
| Temporary Meeting Space Reimbursement | $5,000 |
| Workplace Violence Counseling | $5,000 |
| Kidnap Expense | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Image Restoration and Counseling | $5,000 |
| Donation Assurance | $5,000 |
| Business Travel | $5,000 |

**II.   CONDITIONS**

**A.   Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

B. **Limits of Liability or Limits of Insurance**

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limit of Limits of Liability or Limits of Insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, If this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum Limits of Liability or Limit of Insurance under all such coverage parts or policies combined shall not exceed the highest applicable Limits of Liability or Limit of Insurance under any one coverage part or policy.

2. Limits of Liability or Limits of Insurance identified in Clause I. above are not excess of, but are in addition to the applicable Limits of Insurance stated in the Declarations.

C. **Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III. ADDITIONAL COVERAGES

A. **Identity Theft Expense**

We will reimburse any present Director or Officer of the Named Insured, for "Identity Theft Expenses" incurred as the direct result of any "Identity Theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the Insured's first policy with the Company.   The limit for this coverage will be $5,000 per policy period for all Insureds combined.  No deductible applies to this coverage.

B. **Terrorism Travel Reimbursement**

The Company will reimburse any present Director or Officer of the Named Insured in the event of a "Certified Act of Terrorism" during the policy period which necessitates that he/she incurs "Emergency Travel Expenses."  The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

C. **Emergency Real Estate Consulting Fee**

The Company will reimburse the Insured any realtor's fee or real estate consultant's fee necessitated by the Insured's need to relocate due to the "Unforeseeable destruction" of the Insured's principal location listed on the Declarations page during the policy period. The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

D. **Temporary Meeting Space Reimbursement**

The Company will reimburse the Insured for rental of meeting space which is

PI-BELL-1 (04/06)

necessitated by the temporary unavailability of the Insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period.  Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy.  The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### E.  Workplace Violence Counseling

In the event that an incidence of "workplace violence" occurs at any of the Insured's premises during the policy period, the Company will reimburse the Insured for expenses incurred for the emotional counseling of employees of the Insured, during the policy period.  The limit for this coverage will be $5,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### F.  Kidnap Expense

The Company will pay on behalf of any Officer or Director of the Insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner", parent or child during the policy period, subject to a limit of $50,000 each Policy Period, but not subject to any deductible.  Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.  fees and expenses of an independent negotiator or consultant retained with prior approval of the Company;

2.  interest on any loan taken by the Named Insured to pay Damages covered under this Policy; provided, however, that the Company shall not be liable for any interest accruing prior to thirty (30) days preceding the date of such payment, nor subsequent to the date of reimbursement from the Company for any portion of damages recoverable under this Policy;

3.  costs of travel and accommodations incurred by the Named Insured which become necessary due to the applicable kidnapping;

4.  the reward paid by the Named Insured, which is pre-approved by the Company, to an informant for information not otherwise available which leads to the arrest and conviction of persons responsible for any damages under this Policy; and

5.  current salary to an Officer or Director of the Insured who is kidnapped; provided, however, that the employee shall be held for more than thirty (30) days.  Salary shall be paid for a period commencing upon abduction and ceasing upon the earliest of either the release of the employee or discovery of the death of the employee, or 120 days after the Company receives the last credible evidence that the employee is still alive, or twelve (12) months after the date of kidnapping, or the exhaustion of the kidnap expense limit, whichever comes first.

### G.  Key Individual Replacement Expenses

PI-BELL-1 (04/06)

The Company will pay "Key Individual Replacement Expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the Policy Period which results in the loss of life during the Policy Period. The "Key Individual Replacement Expenses" amount shall be the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

## H. Image Restoration and Counseling

The Company shall reimburse to the Insured expenses incurred for image restoration and counseling arising out of "Improper Acts" by any natural person Insured up to a limit of $5,000 per Policy Period for all Insureds combined.  Covered expenses are limited to:

1.  the costs of rehabilitation and counseling for the accused natural person Insured provided the natural person Insured is not ultimately found guilty of criminal conduct, said reimbursement to occur after acquittal of the natural person Insured;

2.  the costs, charged by a recruiter or expended on advertising, of replacing an Officer as a result of "Improper Acts"; and

3.  the costs of restoring the Named Insured's reputation and consumer confidence through image consulting.

No deductible applies to this coverage.

## I. Donation Assurance

The Company shall reimburse the insured for "Failed Donation Claim(s)". The limit for this coverage will be $5,000 per policy period for all Insureds combined.  No deductible applies to this coverage.

With respect to any "Failed Donation Claim", it is further agreed as follows:

1.  the donor must never have been in bankruptcy, nor have filed for bankruptcy/reorganization prior to the time said pledge was made to the Insured;

2.  for non-cash donations, payment by the Insurer of a "Failed Donation Claim" shall be based on the fair market value of said non-cash donation at the time of the "Failed Donation Claim;"

3.  in the case of unemployment/incapacitation of a natural person donor and as a condition of payment of the "Failed Donation Claim;"

    (a)  neither the natural person donor nor the Insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date and;

    (b)  the donor shall be unemployed for at least 60 days prior to the Insurer making payment;

4.  no coverage shall be afforded for a written pledge of funds or other measurable

tangible property to the Insured dated prior to the Policy Period;

5.   a donation amount which is to be collected by the Insured over more than a 12 month period shall be deemed a single donation.

## J. Business Travel

The Company will pay a Business Travel Accidental Death Benefit to the Named Insured if a Director or Officer suffers an "injury" while traveling on a common carrier for business purposes during the Policy Period which results in loss of life not later than 180 days after the Policy Period expiration, the date of cancellation or the date of non-renewal. The Accidental Death Benefit amount shall be $5,000 per occurrence.  No deductible applies to this coverage.  The "injury" must be reported to the Company during the Policy Period.

The Business Travel Accidental Death Benefit shall not be payable if the cause of the "injury" that resulted in loss of life was:

1.   an intentional act by the insured;

2.   an act of suicide or attempted suicide, whether or not the deceased was sane or insane at the time of the attempted suicide;

3.   an act of war;

4.   a disease process.

## IV. Definitions

A.   "Certified Act of Terrorism", whenever used in this endorsement will mean any act so defined under the Terrorism Risk Insurance Act of 2002.

B.   "Domestic Partner", whenever used in this endorsement means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the Named Insured.

C.   "Emergency Travel Expenses", whenever used in this endorsement will mean:

1.   hotel expenses incurred which directly result from the cancellation of a scheduled transport, by train or air, by a commercial transportation carrier resulting directly from and within forty-eight hours of a "Certified Act of Terrorism;" and

2.   the increased amount incurred in air or train fare which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "Certified Act of Terrorism."

D.   "Failed Donation Claim", whenever used in this endorsement will mean written notice to the Insured during the Policy Period of:

    1.    the bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable tangible property to the Insured;

    2.    the unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable tangible property to the Insured.

E.  "Identity Theft ", whenever used in this endorsement means the act of knowingly transferring or using, without lawful authority, a means of identification of any Officer or Director (or spouse thereof) of the Named Insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

F.  "Identity Theft Expenses", whenever used in this endorsement means:

    1.    costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

    2.    costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

    3.    loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

G.  "Improper Acts", whenever used in this endorsement means any actual or alleged act of:

    1.    sexual abuse;

    2.    sexual intimacy;

    3.    sexual molestation; and/or

    4.    sexual assault;

committed by an Insured against any natural person who is not an Insured. Such "Improper Acts" must have been committed by the Insured while in his or her capacity as an insured.

H.  "injury", whenever used in this endorsement means any physical damage to the body caused by violence, fracture or an accident that results in physical damage or hurt.

I.  "Key Individual Replacement Expenses", whenever used in this endorsement means the following necessary expenses:

    1.  costs of advertising the employment position opening;

    2.  travel, lodging, meal and entertainment expenses incurred in interviewing job

applicants for the employment position opening; and

3. miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up employment contracts.

J. "Unforeseeable Destruction", whenever used in this endorsement means damage resulting from a  "Certified Act of Terrorism", fire, crash or collapse which renders all of the Insured's primary office completely unusable.

K. "Workplace violence", whenever used in this endorsement means any intentional use of or threat to use deadly force by any natural person, with intent to cause harm and that results in bodily "injury" or death of a member of the Insured or any  other natural person while on the Insured's premises.

PI-PLSP-2(08/2004)

# PROFESSIONAL LIABILITY FOR SPECIFIED PROFESSIONS

### THIS IS A CLAIMS MADE POLICY - PLEASE READ IT CAREFULLY

In consideration of the payment of the premium and in reliance upon all statements and information furnished to the insurance company shown in the Declarations (a stock insurance company, herein called the **Company**), including all statements made in the application form and its attachments and the material incorporated therein and made part hereof, the **Company** agrees as follows:

### INSURING AGREEMENTS

## I. COVERAGE

The **Company** shall pay on behalf of the **Insured** all sums, not exceeding the Limits of Liability and in excess of the applicable Deductible set forth in the Declarations, for which the **Insured** shall become legally obligated to pay as **Damages** resulting from any **Claim** first made against the **Insured** and reported to the **Company** by written notice during the **Policy Period**;   PROVIDED ALWAYS THAT such **Claim** is by reason of a **Wrongful Act** committed:

    **A.** During the **Policy Period,** or
    **B.** Prior to the **Policy Period** and subsequent to the Retroactive Date stated in Item 6 of the Declarations provided that prior to the effective date of this  Policy:
        **1.** The **Insured** did not give notice of any such **Wrongful Act** under any prior insurance policy; **and**
        **2.** The **Insured** had no basis to believe that such **Wrongful Act** might reasonably be expected to give rise to a **Claim** under this Policy.

## II. EXPENSES AND SUPPLEMENTARY PAYMENTS

With respect to such insurance as afforded by this policy, the **Company** shall, pay, provided the Limits of Liability have not been exhausted and in excess of the Deductible as stated in the Declarations:

**A. Claim Expenses** incurred in the defense of any **Claim** or suit against the **Insured** seeking **Damages** to which this insurance applies.

**B.** Premiums on bonds to release attachments and appeal bonds, limited to that portion of such bonds that does not exceed the Limits of Liability of this policy, but without any obligation to apply for or furnish such bonds;

**C.** Costs taxed against the **Insured** in any suit and **Claim Expenses** incurred by the **Company**;

**D.** Interest accruing after the entry of judgment, but only for that portion of the judgment which does not exceed the applicable Limits of Liability, until the **Company** has tendered or paid such judgment as does not exceed the **Company's** Limit of Liability thereon; and

**E.** Reasonable expenses incurred by the **Insured** at the **Company's** request in assisting in the investigation and defense of any **Claim,** other than loss of earnings.

All of the foregoing costs, charges and expenses of investigation and legal defense payable by the **Company** are included in the **Company's** applicable Limit of Liability as stated in the Declarations. Any such costs incurred in the investigation or defense of any **Claim** will be applied against the Deductible amount as stated in the Declarations.

Page 1 of 8

PI-PLSP-2(08/2004)

## III. DEFENSE AND SETTLEMENT

**A.** The **Company**, in the **Insured's** name and on the **Insured's** behalf, shall have the right to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any **Claim** or suit.

**B.** The **Company** shall not settle any **Claim** without the consent of the **Insured**, such consent not to be unreasonably withheld. Should the **Insured** refuse to consent to any settlement recommended by the **Company**, and acceptable to the claimant, and elect to further contest the **Claim**, the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled in excess of the **Insured's** Deductible, or the Limits of Liability as stated in Item #4 of the Declarations, whichever is less, including items payable under Section II of this policy up to the date of such refusal.

**C.** The **Insured** shall not admit liability for, or make any voluntary settlement, or incur any costs or expenses in connection with any **Claim** except with the written consent of the **Company**.

**D.** The **Company** shall not be obligated to pay any **Claim** or judgment or **Claim Expenses** or to defend any suit after the applicable Limits of Liability have been exhausted.

## DEFINITIONS

## IV. THE FOLLOWING WORDS AND PHRASES APPEARING IN BOLD AND/OR QUOTATION MARKS HAVE SPECIAL MEANING WHENEVER USED IN THIS POLICY:

**A. Bodily Injury** means physical injury, sickness or disease sustained by a person, including death resulting therefrom at any time. **Bodily Injury** also includes disability, mental anguish, mental injury, shock or fright resulting from or in **Bodily Injury**.

**B. Claim** means a demand receive by the **Insured** for money, including the service of suit or institution of arbitration proceedings involving the **Insured**.

**C. Claim Expenses** means fees charged by any lawyer designated by the **Company** and all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim,** if incurred by the **Company**. **Claim Expenses** shall not include salary charges of regular employees of the **Company** or loss of earnings incurred by the **Insured**.

**D. Damages** means a monetary judgment, award or settlement and does not include fines, sanctions, statutory penalties, punitive damages or exemplary damages, including those based upon legal fees whether imposed by law, court or otherwise.

**E. Insured** means:

**1.** The individual, partnership, corporation or other entity named in Item 1 of the Declarations and shall include any partner, director, officer or employee thereof while acting within the scope of their duties as such.

**2.** Any former or retired partner, director, officer or employee of the **Named Insured** or of any **Predecessor Firm** but only for those **Professional Services** rendered on behalf of the **Named Insured** prior to the date of separation or retirement from such entity(ies).

**3.** Any independent contractor associated exclusively with the **Named Insured** while acting solely on the **Named Insured's** behalf.

PI-PLSP-2(08/2004)

    4. The heirs, executors, administrators, assignees, and legal representatives of each **Insured** in the event of such **Insured's** death, incapacity or bankruptcy as respects the liability of each **Insured** as is otherwise covered herein.

F. **Named Insured** means the proprietor, firm or organization specified in Item 1 of the Declarations.

G. **Personal Injury** means wrongful entry or eviction or other invasion of private occupancy, the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

H. **Policy Period** means the period from the inception date of the policy to the date of expiration as set fourth in Item 2 of the Declarations or such earlier termination date, if any.

I. **Predecessor Firm** means any firm or corporation engaged in providing **Professional Services** as stated in Item 8 of the Declarations and to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

J. **Professional Services** means services rendered to others for a fee solely in the conduct of the **Insured's** profession as stated in Item 8 of the Declarations.

K. **Property Damage** means physical injury to tangible property, including all resulting loss of use of such property or loss of use of tangible property that is not physically injured.

L. **Termination of Coverage** means, whether made by the insurer or the insured at anytime:

    1. cancellation or nonrenewal of a policy; or'

    2. decrease in limits, reduction of coverage, increased of deductible, new exclusion, or any other change in coverage less favorable to the insured.

M. **Wrongful Act** means a negligent act, error, or omission committed or alleged to have been committed by the **Insured** or any person for whom the **Insured** is legally liable in the rendering of **Professional Services**.

# EXCLUSIONS

## V. THIS POLICY DOES NOT APPLY TO ANY CLAIM AND CLAIM EXPENSES ARISING OUT OF:

A. any fraudulent, dishonest, criminal, intentional, willful or malicious acts or assault or battery. However, the **Insured** shall be reimbursed for all amounts which would have been collectable under this policy if such allegations are not subsequently proven.

B. **Bodily Injury**, or **Property Damage**, or **Personal Injury.**

C. any non-pecuniary relief, fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy may be construed.

D. any failure to effect or maintain any insurance or bond.

E. the gaining in fact of any personal profit or advantage to which the **Insured** is not legally entitled, or out of disputes involving the **Insured's** fees or charges.

**F**. any infringement of copyright, patent or trademark or any violation of the Securities Exchange Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or Securities Law or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations.

**G**. the breach of fiduciary duty, responsibility or obligation in connection with any employee benefit or pension plan including the Employees Retirement Income Security Act of 1974 (ERISA) including any amendments or State or local laws.

**H**. any express warranties or guarantees or; the **Insured** assuming liability under contract unless the **Insured** would have been legally liable in the absence of such contract.

**I**. any **Claim** brought by any **Insured** against another **Insured.**

**J**. any pending or prior litigation as of the inception date of this policy, as well as all future **Claims** or litigation based on the pending or prior litigation derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

**K**. the refusal to employ, termination of employment or other employment-related policies, acts or omissions.

**L**. the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.

**M**. the actual or alleged discrimination arising out of but not limited to the basis of age, color, race, sex, creed, national origin, religion, disability or marital status.

**N**. services as an attorney, accountant, actuary, tax preparer,  tax consultant, real estate broker, securities broker, securities dealer, registered representative of a securities broker or dealer, mortgage broker, financial planner, doctor of medicine or dentistry, architect or engineer.

**O**. any **Professional Services** performed for any entity in which any **Insured** is a principal, partner, officer, director or a more than three percent (3%) shareholder.

No **Wrongful Act** of any **Insured** nor any fact pertaining to any **Insured** shall be imputed to any other partner, director, officer or employee for the purposes of determining the applicability of Exclusions A and E.

## CONDITIONS

## VI. LIMITS OF LIABILITY

Regardless of the number of (a) **Insureds** under this policy, (b) persons or entities who allege **Damages** or (c) **Claims** made or suits brought, the **Company's** liability is limited as follows:

**A**. The company shall be liable to pay that portion of any **Damages** and **Claim Expenses** in excess of the applicable Deductible as stated in the Declarations for any one **Claim** up to the Limits of Liability as stated in Item 4 of the Declarations. A deductible shall apply to each and every **Claim**, including **Claim Expenses**, and such Deductible shall be borne by the **Insured**.  The Deductible shall be uninsured and be at the **Insured's** own risk.

**B**. The **Company's** maximum aggregate liability for all **Damages** and **Claim Expenses** arising out of all **Claims** made and reported during the **Policy Period** shall be the Limit of Liability stated in the

PI-PLSP-2(08/2004)

Declarations as aggregate. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the aggregate Limit of Liability provided by this policy as stated in Item 4 of the Declarations.

**C. Claims** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or the Extended Reporting Period (if applicable), of the policy in which the earliest **Claim** arising out of such act(s) or circumstance(s) was first made and all **Damages** and **Claim Expenses** shall be subject to the same each **Claim** Limit of Liability.

## VII. GENERAL CONDITIONS

**A. Policy Territory:** The insurance afforded applies worldwide provided **Claim** is made and suit is brought against the **Insured** within the United States Of America, its territories or possessions, Puerto Rico, or Canada.

**B. Notice and Claim Reporting Provisions:** Notice hereunder shall be given by or on behalf of the **Insured** in writing to the **Company** at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004 Attn: Claims Department or to any Authorized Representative of the **Company**.

   **1.** The **Insured** shall, as a condition precedent to the obligations of the **Company** under this policy, give written notice to the **Company** as soon as practicable during the **Policy Period**, or during the Extended Reporting Period (if any) of any **Claim** made against the **Insured.**

   **2.** If during the **Policy Period**, or during the Extended Reporting Period (if any), the **Insured** shall become aware of any circumstance which could reasonably be expected to give rise to a **Claim** the **Insured** shall give written notice to the **Company** regarding all particulars of said incident as soon as practicable. Such written notice of any circumstance must include:

      **a.** the specific **Wrongful Act; and**
      **b.** the **Damages** which have or may result from such **Wrongful Act; and**
      **c.** the circumstances by which the **Insured** first becomes aware of such **Wrongful Act.**

Any **Claim** then arising out of such **Wrongful Act** will be considered to have been first made at the time of the original notice.

## C. Extended Reporting Period:

   **1.** If the **Company** or the **Insured** cancels or refuses to renew this policy for reasons other than non-payment of premium, the **Company** will provide to the **Insured** a 60 day extension of the coverage granted by this policy, at no additional charge, for any **Claim** first made against the **Insured** and reported to the **Company** during the 60 day extension period but only as respects **Wrongful Acts** committed after the Retroactive Date (if any) stated in the Declarations and prior to the date of cancellation or non-renewal.

   **2.** If the **Company** or the **Insured** cancels or refuses to renew this policy for reasons other than non-payment of premium, the **Insured** shall have the right to purchase, for an additional payment, a Supplemental Extended Reporting Period of one of the following durations: 12 months; 24 months; 36 months; 48 months; 60 months, or unlimited.  This extension will provide coverage granted by this policy for any **Claim** first made against the **Insured** and reported to the **Company** during the Supplemental Extended Reporting Period and starts when the 60 day extension period under 1. above ends.  This Supplemental Extended Reporting Period only applies to **Wrongful Acts** committed after the Retroactive Date (if any) stated in the Declarations and prior to the date of cancellation or non-renewal.  The

PI-PLSP-2(08/2004)

**Insured** must apply for this extension in writing prior to the expiration of the 60 day extension period under 1. above.

3. All premium paid with respect to an extension period shall be deemed to be fully earned as of the first day of the extension period. For the purpose of this clause, any change in premium terms or other terms on renewal shall not constitute a refusal to renew.

4. Limits of Liability available during any Extended Reporting Period shall not exceed the balance of the Limits of Liability in effect at the time the policy terminated.

**D. Deductible:** It is the first **Named Insured's** responsibility to pay the deductible amount as stated in Item 5 of the Declarations as the result of each **Claim.** The **Company** may pay part of or all of the Deductible amount to effect a settlement of any **Claim,** however, upon notification of any such action taken, the **Named Insured** shall promptly reimburse the **Company** for all of the Deductible amount as has been paid by the **Company.**

**E. Duties of the Insured in the event of a Claim:**

1. As soon as practicable the **Insured** shall give written notice containing particulars sufficient to identify the **Insured,** time, place and underlying circumstances of the **Claim** to the **Company.**

2. The **Insured** shall admit no liability, make no payments, assume no obligation and incur no expense related to such **Claim** without the written consent of the **Company.**

3. When a **Claim** is made against an **Insured** the **Insured** shall immediately forward to the **Company** every demand, notice, summons, or other process received by the **Insured** or the **Insured's** representatives.

4. The **Insured** shall cooperate with the **Company** and upon the **Company's** request assist in making settlements and in the conduct of suits. The **Insured** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and in obtaining the attendance of witnesses.

5. The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company.**  Such consent shall not be unreasonably withheld.

**F. Subrogation:** If the **Company** pays any amount hereunder as **Damages, Claim Expenses** or any combination thereof, it shall be subrogated to the **Insured's** rights of recovery against any person, firm or organization. The **Insured** shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. The **Insured** shall not waive or prejudice such rights prior to or subsequent to any **Claim.**

**G. Changes:** Notwithstanding anything to the contrary, no provision of this policy may be amended, waived or otherwise changed except by endorsement issued by the **Company** to form part of this policy.

**H. Action Against the Company:**

1. No action shall lie against the **Company** unless, as a condition precedent thereto, there shall have been compliance with all terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgement entered in a court of law against the **Insured** or by written agreement of the **Insured,** the claimant or claimant's legal representative and the **Company.**

PI-PLSP-2(08/2004)

2. Any person or the legal representatives thereof who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impeded by the **Insured** or their legal representatives. Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.

**I. Mergers and Acquisitions**: In the event of a merger or acquisition involving the **Named Insured**, it is a condition of this policy to the continuation of coverage that the **Named Insured** shall notify the **Company** within thirty (30) days of such merger or acquisition. Should a material change occur in the size or business operations of the **Named Insured** the **Company** shall be entitled to:

1. Re-negotiate the premium or other terms of this policy; and

2. Discontinue coverage by cancellation under section VII.J.2. below.


**J. Cancellation or Non-Renewal**:

1. This policy may be canceled by the **Named Insured** by surrender thereof and selection of a future date to the **Company** at its address stated in the Declarations or by mailing to the **Company** written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by the **Insured** the **Company** shall retain the customary short-rate portion of the premium.

2. The policy may be canceled by the **Company** by mailing to the **Named Insured** at the address stated in the Declarations written notice stating when, not less than forty-five (45) days thereafter or ten (10) days in the case of cancellation for non-payment of premium or deductible, such cancellation shall become effective. If the policy is canceled by the **Company**, earned premium shall be computed pro-rata.

3. In the event the **Company** refuses to renew this policy, the **Company** shall mail to the **Named Insured**, at the address stated in the Declarations, not less than forty-five (45) days prior to the expiration of this policy, written notice of non-renewal. Such notice shall be conclusive on all **Insureds**.

4. The mailing of Notice of Cancellation or Non-Renewal as aforementioned shall be sufficient notice of the intent to cancel or non-renew. The effective date of cancellation or non-renewal specified in the notice shall terminate this **Policy Period**. Delivery of such notice shall be equivalent to mailing.


**K. Conformity to Statutes**: Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.


**L. First Named Insured**: If there is more than one **Insured** covered by this policy the First **Named Insured** shall act for all **Insureds** as respects payment of premium, deductibles, return premium accepting and refusing changes and election of extended reporting period. All notices relating to this insurance will be sent to the First **Named Insured** and will serve as notice to all **Insureds**.


**M. Assignment**: Assignment of interest under this policy shall not bind the **Company** unless its consent is endorsed hereon.

PI-PLSP-2(08/2004)

**N. Authorization Clause**: By acceptance of this policy, the **Insured** agrees that the statements in the Application are its agreements and representations that this policy is issued in reliance upon the truth of such representations. This policy embodies all existing agreements between the **Insured** and the **Company** relating to this insurance.

**O. Other Insurance**: This insurance is excess over any other valid and collectable insurance available to the **Insured** except as respects such insurance written to apply specifically in excess of this insurance.

**P. Liability Coverage Disputed and Reservation of Rights**: If a controversy or dispute arises with regard to whether coverage exists with respect to a **Claim** submitted by the **Insured** under the coverage sections of this policy the **Company** may elect to provide a defense under a Reservation of Rights whereby the **Company** reserves its rights to deny and reject any **Claim** for **Damages**. In the event it is finally established by judgment or agreement that the **Company** has no liability with respect to such a **Claim**, the **Insured** shall reimburse the **Company** upon demand all sums and monies paid by the **Company** to defend and/or settle such **Claim**.

**Q. False or Fraudulent Claims**: If any **Insured** shall commit fraud in presenting any **Claim** as regards amounts or otherwise, this insurance shall become void as to such **Insured** from the date such fraudulent **Claim** is presented.


**IN WITNESS WHEREOF, THE COMPANY HAS CAUSED THIS POLICY TO BE SIGNED BY THE PRESIDENT AND SECRETARY OF THE COMPANY.  THIS POLICY SHALL NOT BE VALID UNLESS COUNTERSIGNED ON THE DECLARATIONS PAGE BY A DULY AUTHORIZED REPRESENTATIVE OF THE COMPANY.**


_____                    _____
        **SECRETARY**                                                      **PRESIDENT**

PI-PLSP-10 (4-97)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION

In consideration of the premium paid, it is agreed that the Company shall not be liable to make any payment for "Damages" or "Claim Expenses" in connection with any "Claim" made against any "Insured" based upon or attributable to any "Bodily Injury" or "Property Damage" resulting from radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, "source material", "special nuclear material" and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law.

All other terms and conditions of this Policy remain unchanged.

PI-PLSP-16 (4-97)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is agreed that Section V, EXCLUSIONS, J is deleted and replaced with the following:

J.  Any pending and/or prior litigation as of  04/23/2007 , as well as all future "Claims" arising out of said pending and/or prior litigation.


All other terms and conditions of this Policy remain unchanged.

PI-PLSP-102 (4-97)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

### BANKRUPTCY/INSOLVENCY EXCLUSION

In consideration of the premium paid, it is agreed that this Policy does not apply to any **Claim** against the **Insured** arising out of, based upon, or attributable to:

I.    the bankruptcy, insolvency or financial failure of the Insured; or

II.   the Insured's seeking protection under federal bankruptcy laws (or any similar laws); or

III.  the bankruptcy, insolvency or financial failure of any entity with whom the Insured transacts business.

All other terms and conditions of this Policy remain unchanged.

PI-PLSP-145 (08/2004)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMPUTER/TECHNOLOGY CONSULTANT PRO-PAK ELITE

This endorsement modifies and is subject to the insurance provided under the following:

PROFESSIONAL LIABILITY FOR SPECIFIED PROFESSIONS

This Policy is amended as follows:

**1.** The following is added to **DEFINITIONS,** section  IV of the policy:

The term **"Computer Consultant"** or **"Technology Consultant"** as stated in Item 8 of the Declarations is defined as follows:

**"Computer Consultant"** and **"Technology Consultant"** both mean an individual or firm retained by a third party for the purpose of:

1. analysis of operating problems and client needs associated with computer hardware and software;
2. creation, recommendation, installation and/or implementation of computer hardware and software;
3. customization of, servicing of and monitoring of computer hardware and software; and
4. training of personnel in the utilization of computer hardware and software.

**"Unauthorized access"** means a third party's access to a computer, computer system, or computer network, with authorization or exceeding authorization.

**2. DUTY TO DEFEND COVERAGE**

Section III. DEFENSE AND SETTLEMENT, A. is deleted and replaced with the following:

**A.** The **Company**, in the **"Insured's"** name and on the **"Insured's"** behalf, shall have the right and the duty to investigate, defend and conduct settlement negotiations, including selection of defense counsel, in any **"Claim"** or suit, even if such suit or **"Claim"** is groundless, false, or fraudulent.

**3. WORLDWIDE COVERAGE**

Section VII. **GENERAL CONDITIONS**, A. is amended to read:

**A.   Policy Territory:**

1. Worldwide coverage is provided for any **"Claim"** made provided that suit is brought against the **"Insured"** within the United States of America, its territories or possessions, Puerto Rico, or Canada.

2. For any **"Claim"** made for which suit is brought against the **"Insured"** outside the United States of America,  its territories or possessions, Puerto Rico, or Canada, the following conditions will apply:

a. the **"Insured"** shall undertake the investigation, defense, and settlement of the **"Claim"** and keep the **"Company"** advised of all such proceedings and actions, and;

PI-PLSP-145 (08/2004)

    b. the Company's obligation under  this Policy shall be limited to reimbursement of the **"Insured"** for **"Damages"** and **"Claim Expenses."**  Any payment under this policy shall be made in United States dollars at the rate of exchange published in *The  Wall Street Journal* on the date the final judgement is reached or settlement is agreed upon.

## 4.   PERSONAL INJURY COVERAGE

Section I. COVERAGE. is deleted and replaced with the following

### I. COVERAGE

The Company shall pay on behalf of the **"Insured"** all sums, not exceeding the Limits of Liability and in excess of the applicable Deductible set forth in the Declarations, for which the **"Insured"** shall become legally obligated to pay as **"Damages"** resulting from any **"Claim"** first made against the **"Insured"** and reported to the Company by written notice during the **"Policy Period"**; provided always that such **"Claim"** is by reason of:

    1. a **"Wrongful Act"** or
    2. **"Personal Injury"** (but only when arising out of the performance of **"Professional Services"**)

committed during the **"Policy Period,"** or prior to the **"Policy Period"** and subsequent to the Retroactive Date stated in Item 6 of the Declarations provided that prior to the effective date of this Policy:

    a. The **"Insured"** did not give notice of any such **"Wrongful Act"** under any prior insurance policy; and
    b. The **"Insured"** had no basis to believe that such **"Wrongful Act"** might be reasonably  be expected to give rise to a **"Claim"** under this Policy.

Section V. EXCLUSION B. is deleted and replaced with the following:

**B.  (i) "Bodily Injury,"** or **"Property Damage."**

## 5.   AUTOMATIC INDEPENDENT CONTRACTOR COVERAGE

Section IV. **DEFINITIONS**, E. 3. is deleted and replaced with the following:

Any independent contractor working under contract with/for the **"Named Insured,"** but solely as respects those covered **"Professional Services"**rendered on behalf of the **"Named Insured."**

## 6.   DEFENSE FOR CRIMINAL ACTS SUBJECT TO FINAL ADJUDICATION

Section V, **EXCLUSIONS**, A is deleted and replaced with the following:

A. Any fraudulent, dishonest, criminal, intentional, willful or malicious acts or assault or battery. However, the **"Company"** shall provide a defense for such Claim unless or until a judgement or final adjudication adverse to the **"Insured"** shall establish such behavior occurred as an essential element of the cause of action so adjudicated.

## 7.   PENDING AND/OR PRIOR LITIGATION EXCLUSION

Section V, **EXCLUSIONS**, J is deleted and replaced with the following:

Any pending and/or prior litigation as of      04/23/2007      , as well as all future **"Claims"** which may arise out of pertinent pending and/or prior litigation.

## 8.   DEFENSE COSTS IN ADDITION TO THE LIMIT

A. Section II. **EXPENSE AND SUPPLEMENTARY PAYMENTS**, is amended in part by deleting the last paragraph and replacing it as follows:

Any such costs incurred in the investigation or defense of any **"Claim"** will be applied against the Deductible amount stated in the Declarations.

B. Section VI. **LIMITS OF LIABILITY**, is deleted and replaced with the following:

Regardless of the number of (a) **"Insureds"** under this policy, (b) persons or entities who allege **"Damages"** or (c) **"Claims"** made or suits brought, the Company's liability is limited  as follows:

A. The Company shall be liable to pay that portion of any **"Damages"** in excess of the applicable **"Deductible"** as stated in the Declarations for any one **"Claim"** up to the Limits of Liability as stated in Item 4 of the Declarations. A Deductible shall apply to each and every **"Claim"**, including **"Claim" Expenses**, and such Deductible shall be borne by the **"Insured."**  The Deductible shall be uninsured and be at the **Insured's** own risk.

B. The Company's maximum aggregate liability for all **"Damages"** arising out of all **"Claims"** made and reported during the **"Policy Period"** shall be the Limit of Liability stated in the Declarations as aggregate. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the aggregate Limit of Liability provided by this Policy as stated in Item 4 of the Declarations.

C. **"Claims"** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **"Claim"** and shall be considered first made during the **"Policy Period"** or the Extended Reporting Period (if applicable),  of the Policy in which the earliest **"Claim"** arising out of such act(s) or circumstance(s) was first made and all **"Damages"** shall be subject to the same each **"Claim"** Limit of Liability.

D. Payment by the Company of **"Claims" Expenses** incurred with any **"Claim"**, shall not serve to reduce the Limit of Liability stated in Item 4 of the Declarations.

## 9.   ADDITIONAL EXCLUSIONS

Section V, **EXCLUSIONS**, is amended to include the following:

**THIS POLICY <u>ALSO</u> DOES NOT APPLY TO ANY "CLAIM" OR "CLAIM EXPENSES" ARISING OUT OF:**

A. Any **"Wrongful Act"** committed with the knowledge that it was a **"Wrongful Act."**

B. Any **"Claim"** arising out of or connected with the performance or failure to perform services for any person or entity:

(1) which is owned by or controlled by any **"Insured";** or
(2) which owns or controls any **"Insured";** or,

(3) which is affiliated with any **"Insured"** through any common ownership or control; or,
(4) in which any **"Insured"** is a director, officer, partner or principal stockholder.

C. Any mechanical or electrical failure, including any power interruption, surge, brownout or blackout;

D. Any sale or defect of any non-customized commercially available computer software or hardware products;

E. The failure to prevent unauthorized access to or use of an electronic system or computer program, unless such unauthorized access or use is a result of a malfunction of the **"Insured's"** security software products;

F. Any **"Claim"** arising out of the failure of any real or intangible property to have at any point or points in time any guaranteed economic value.

G. Any **"Claim"** arising out of the transfer of funds, monies, or securities to or from any account or institution; or guaranteeing of the availability of funds; or representation of a specified rate of return and/or interest;

H. Any **"Claim"** based upon or arising out of incorrect description of any article or commodity or any mistake in advertised price or any false, misleading, deceptive or fradulent advertising.

## 10.  IDENTITY THEFT EXPENSES

We will reimburse the **"Named Insured,"** on behalf of any **"Insured,"** for **"Identity Theft Expenses"** incurred as the direct result of any one **"Identity Theft"** first discovered and reported during the **"Policy Period;"** provided that it began to occur subsequent to the effective date of the **"Insured's"** first policy with the Company. The limit of liability for this coverage will be $1,000 per **"Policy Period"** for all **"Insureds"** combined. No deductible applies to this coverage.

**"Identity Theft,"** whenever used in this policy means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"Insured"** with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Identity Theft Expenses,"** whenever used in this policy means:

a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.
b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.
c. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

## 11.  TERRORIST TRAVEL REIMBURSEMENT

The Company will reimburse any present partner, officer, director, stockholder, or employee of the **"Named Insured"** in the event of a **"Certified Act of Terrorism"** during the policy period

PI-PLSP-145 (08/2004)

which necessitates that he/she incurs **"Emergency Travel Expenses."**  The limit for this coverage will be $1,000 per **"Policy Period"** for all **"Insureds"** combined. No deductible applies to this coverage.

**"Emergency Travel Expenses"** whenever used in this policy will mean hotel expenses incurred which directly result from the cancellation of a scheduled transport, by train or air, by a commercial transportation carrier resulting directly from and within forty-eight hours of a **"Certified Act of Terrorism;"** and the marginal increase in air or train fare which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a terrorist incident.

**"Certified Act of Terrorism"** whenever used in this policy will mean any act covered under the Federal Terrorism Risk Insurance Act of 2002.

## 12. EMERGENCY REAL ESTATE CONSULTANT FEE

The Company will reimburse the **"Insured"** any realtor's fee or real estate consultant's fee necessitated by the **"Insured's"** need to relocate due to the **"Unforeseeable Destruction"** of the **"Insured's"** location, listed on the declarations page, during the **"Policy Period."**  The limit for this coverage will be $1,000 per policy period for all **"Insured's"** combined. No deductible applies to this coverage.

**"Unforeseeable Destruction"**  whenever used in this policy will mean Damage resulting from a **"Certified Act of Terrorism"** (as defined in Item 11 above), fire, crash or collapse which renders all of the **"Insured's"** primary office completely unusable.

## 13. TEMPORARY MEETING SPACE COVERAGE

The Company will reimburse the **"Insured"** for rental of meeting space which is necessitated by the temporary unavailability of the **"Insured's"**  primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period.  Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not an **"Insured"** under this policy.  The limit for this coverage will be $250 per policy period for all **"Insureds"**  combined. No deductible applies to this coverage.

## 14. WORKPLACE VIOLENCE COUNSELING COVERAGE

In the event that an incidence of **"Workplace Violence"** occurs at the **"Insured's"**  premises during the policy period, the Company will reimburse the **"Insured"**  for expenses incurred for the emotional counseling of members of the **"Insured"** during the policy period.  The limit for this coverage will be $1,000 per policy period for all **"Insureds"** combined. No deductible applies to this coverage.

 **"Workplace Violence"** whenever used in this policy will mean any intentional use of, or threat to use deadly force by any natural person, with an intent to cause harm and that results in bodily injury or death of a member of the **"Insured"** or any other natural person while on the **"Insured's"** premises.

## 15. THEFT OF WORK MATERIALS FROM PERSONAL AREAS

The Company will reimburse the **"Insured"** 50% of their deductible for any theft involving **"Work Materials"** which are stolen from the **"Insured's Personal Areas"** during the **"Policy Period,"** which is covered by other insurance.  No reimbursement is applicable under this section for thefts

PI-PLSP-145 (08/2004)

for which no other insurance policy provides a settlement of any amount.  The limit for this coverage will be $500 per policy period for all **"Insureds"** combined. No deductible applies to this coverage.

   **"Work Materials"** whenever used in this policy will mean any items which are used by the **"Insured"** solely in the course of providing professional services; inclusive of stores of data and client records.

   **"Insured's Personal Areas"** whenever used in this policy will be any residence or automobile owned or rented by any member of the **"Insured."**


## 16. KIDNAP/RANSOM COVERAGE

   The Company will pay on behalf of the **"Named Insured,"** reasonable fees incurred by the kidnapping of an **"Insured"** during the **"Policy Period,"** provided that it occurs within the United States, subject to a limit of $50,000 each **"Policy Period,"** but not subject to any deductible.

Reasonable fees will include:

   1. fees and expenses of an independent negotiator or consultant retained with prior approval of the  Company;

   2. interest on any loan taken by the **"Named Insured"** to pay **"Damages"** covered under this Policy; provided, however, that the Company shall not be liable for any interest accruing prior to thirty (30) days preceding the date of such payment, nor subsequent to the date of reimbursement from the Company for any portion of **"Damages"** recoverable under this Policy;

   3. costs of travel and accommodations incurred by the **"Named Insured"** which become specifically necessary due to the applicable kidnapping;

   4. the reward paid by the **"Named Insured"** to an informant for information not otherwise available which leads to the arrest and conviction of persons responsible for any **"Damages"** under this Policy; and

   5. salaries to an employee who is kidnapped at the annual rate in effect prior to the kidnapping paid by the **"Named Insured"**; provided, however, that the employee shall be held for more than thirty (30) days.  Salary shall be paid for a period commencing upon abduction and ceasing upon the earliest of either the release of the employee or discovery of the death of the employee, or 120 days after the Company receives the last credible evidence that the employee is still alive, or twelve (12) months after the date of kidnapping.


## 17. CONDITIONS AMENDMENT

   The following is added to **CONDITIONS,** but only with regard to items **11** though **17** above:

   In the event that multiple recoveries would otherwise be possible under items 11 through 17 above resulting from the same circumstances, the Company is only liable to pay the greatest amount applicable under one of the above coverages.

PI-SLD-001 (01/03)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

# PROFESSIONAL LIABILITY

## *DIRECTORS AND OFFICERS LIABILITY*

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of the Insurance Services Office Inc., used with its permission.

PI-ARB-1 MO (3/05)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY..</u>

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer' mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, both parties may, by mutual consent, agree in writing to arbitration of the disagreement.

If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, both parties must request that selection be made by a judge of a court having jurisdiction. Each party will:

    1. Pay the expenses it incurs; and

    2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

Includes copyright material of the Insurance Services Office, Inc. used with its permission.

PI-DEF-NOTICE-MO

## DISCLOSURE NOTICE

## DEFENSE WITHIN LIMITS

I UNDERSTAND AND ACKNOWLEDGE THAT THE ATTACHED POLICY CONTAINS A DEFENSE WITHIN LIMITS PROVISION WHICH MEANS THAT THE DEFENSE COSTS WILL REDUCE OUR LIMITS OF INSURANCE AND MAY EXHAUST THEM COMPLETELY.  SHOULD THAT OCCUR, WE SHALL BE LIABLE FOR ANY FURTHER LEGAL DEFENSE COSTS AND DAMAGES.

Signature_____

(President, Chairman or Executive Director)

PI-Notice-MO (4-01)

# IMPORTANT NOTICE

To obtain information or make a complaint:

1. You may call Philadelphia Indemnity Insurance Company's toll-free telephone number for information or to make a complaint at

**1-877-438-7459**

2 You may write to Philadelphia Indemnity Insurance Company at our principal place of business:

Philadelphia Indemnity Insurance Company
One Bala Plaza, Suite 100
Bala Cynwyd, PA 19004
(610) 617-7900
FAX # (610) 617-7940

3. **ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

PI-PLSP-MO-1(10/04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

## MISSOURI AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY FOR SPECIFIED PROFESSIONS

Section VII., Subsection **J. Cancellation or Non-Renewal**, is deleted and replaced with the following:

**J. Cancellation or Non-Renewal:**

1. This policy may be canceled by the **Named Insured** by surrender thereof and selection of a future date to the **Company** at its address stated in the Declarations or by mailing to the **Company** written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by the **Insured** the **Company** shall retain the customary short-rate portion of the premium.

2. The policy may be canceled by the **Company** by mailing to the **Named Insured** at the address stated in the Declarations advance written notice.  Notice shall be given at least:

   (a)   10 days before the effective date of cancellation, if the **Company** cancels for nonpayment of premium or deductible;

   (b)   45 days before the effective date of cancellation, if the **Company** cancels for:  fraud or material misrepresentation affecting the policy or in the presentation of a claim under the policy; a violation of any of the terms or conditions of the policy; any changes in conditions after the effective date of the policy which have materially increased the hazards originally insured; insolvency of the insurer, or involuntary loss of reinsurance for the policy;

   (c)   60 days before the effective date of cancellation, if the **Company** cancels for any other reason.

   If the policy is canceled by the **Company**, earned premium shall be computed pro-rata.

3. In the event the **Company** refuses to renew this policy, the **Company** shall mail to the **Named Insured**, at the address stated in the Declarations, not less than sixty (60) days prior to the expiration of this policy, written notice of non-renewal. Such notice shall be conclusive on all **Insureds**.

4. The mailing of Notice of Cancellation or Non-Renewal as aforementioned shall be sufficient notice of the intent to cancel or non-renew. The effective date of cancellation or non-renewal specified in the notice shall terminate this **Policy Period**. Delivery of such notice shall be equivalent to mailing. The Notice of Cancellation or Non-Renewal shall state the reasons for cancellation or non-renewal.

# POLICY CHANGE DOCUMENT

**POLICY NO.:**  PHSD250284

| Philadelphia Indemnity Insurance Company | 5167 | GALLAHER-TANGORA-RODES INSURANCE |
|---|---|---|

NAMED INSURED       LSI Lowery Systems, Inc. dba LSI Teamcen
                    The Intergrated Business Solutions Group

MAILING ADDRESS     1329 Horan Dr
                    Fenton, MO 63026-1939

POLICY PERIOD:      FROM   04/23/2007     TO   04/23/2008     at
                    12:01 A.M. Standard Time at your mailing address shown above.

CHANGE EFFECTIVE    04/23/2007            CHANGE #     1

DESCRIPTION

In consideration of the premium reflected, the policy is amended as indicated below:

Item 6 of the Declarations Page is amended to read:
Retroactive date 04/23/1999

Path ID 2326581

| Total Annual Additional/Return Premium $ | 0.00 NO CHANGE | Total Prorate Additional/Return Premium $ | 0.00 NO CHANGE |
|---|---|---|---|

COUNTERSIGNED                    BY

          (Date)                          (Authorized Representative)

Home Office Copy                            Page 1 of 1

Change Date: 04/23/2007                                                    PI-PLSP-1 (08/2004)



# Philadelphia Insurance Companies
One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania  19004
**610.617.7900    Fax:  610.617.7940**

## *PROFESSIONAL LIABILITY FOR SPECIFIED PROFESSIONS*

☒ **Philadelphia Indemnity Insurance Company**         ☐ **Philadelphia Insurance Company**

### DECLARATIONS

**Policy Number:** PHSD250284

**NOTICE:  THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ THIS POLICY CAREFULLY.  THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR INVESTIGATION AND LEGAL COSTS. FURTHER NOTE THAT AMOUNTS INCURRED FOR SUCH COST SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT**

Item    1.      **Named Insured** and Address:

LSI Lowery Systems, Inc. dba LSI Teamcen
The Intergrated Business Solutions Group
1329 Horan Dr
Fenton, MO 63026-1939

Item    1a.     **Agent Name** and Address:

GALLAHER-TANGORA-RODES INSURANCE
P.O. BOX 798
MEXICO, MO,  65265

Item    2.      **Policy Period:**  From: 04/23/2007 To: 04/23/2008
                                (12:01 A.M. Standard Time)

Item    3.      Premium:        $          6,119.00

Item    4.      Limits of Liability:  (A) $      1,000,000      each **Claim**, including **Claims Expense**

                                (B) $      1,000,000      Annual Aggregate, including **Claims Expense**

Item    5.      Deductible:        $          7,500      Deductible per **Claim**

Item    6.      Retroactive Date: 04/23/1999

Item    7.      Additional Premium for Supplemental Extended Reporting Period: $   4,589.25

Item    8.      **Named Insureds** Profession:
                Computer Bureaus/Consultants

PI-PLSP-1 (08/2004)

Endorsements:

By accepting this Policy, the **Insured** agrees that the statements in the application are personal representations, that they shall be deemed material, and that this Policy is issued in reliance upon the truth of such representations.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Authorized Representative | Countersignature | Countersignature Date |