

# PHILADELPHIA
## INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
610.617.7900 • Fax 610.617.7940 • PHLY.com

May 7th, 2012

To Whom It May Concern:

Philadelphia Indemnity Insurance Company policy (#PHSD319209), effective April 23rd, 2008 to April 23rd, 2009, was issued to **LSI Lowery Systems, Inc. dba LSI Teamcen; The Intergrated Business Solutions Group** of Fenton, MO.

I, Howard Goldstein, do hereby certify that this is a true and correct copy of the above captioned policy.

_____

Howard E. Goldstein
Assistant Vice President, Specialty Lines

SWORN AND SUBSCRIBED to before me on this Seventh day of May, 2012:

_____
(Notary Public)

COMMONWEALTH OF PENNSYLVANIA
Linda M. Wentzel, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Nov. 7, 2013
Member, Pennsylvania Association of Notaries

_____
(My commission expires)

---

Philadelphia Consolidated Holding Corp. • Philadelphia Indemnity Insurance Company • Philadelphia Insurance Company • Maguire Insurance Agency, Inc.

**Bell Endorsement & Crisis Management**

PHLY has increased limits on Bell Endorsement and created a Crisis Management Endorsement that will be attached to all of our policies.

# Bell Endorsement

**$25,000 Identity Theft Expense** coverage which reimburses the expenses of any director or officer who becomes a victim of an incident of identity theft.

**$25,000 Terrorism Travel Reimbursement** which covers any director or officer for emergency travel expenses that he or she incurs in the event of a "certified act of terrorism".

**$25,000 Emergency Real Estate Consulting Fee** coverage for realtor's fee or real estate consultant's fee necessitated by the Insured's need to relocate due to the "Unforeseeable destruction" of the Insured's principal location.

**$25,000 Temporary Meeting Space Reimbursement** coverage for rental of meeting space which is necessitated by the temporary unavailability of the Insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater.

**$25,000 Workplace Violence Counseling** in the event that a violent incident occurs at any of the Insured's premises.

**$50,000 Kidnap Expense** coverage for reasonable fees incurred as a result of the kidnapping of a Director or Officer or their spouse, "domestic partner", parent or child.

**$50,000 Key Individual Replacement Expenses** coverage for the Chief Executive Officer or Executive Director who suffers an "injury" which results in the loss of life. No deductible applies to this coverage.

**$25,000 Image Restoration and Counseling** coverage for image restoration and counseling arising out of "Improper Acts."

**$25,000 Donation Assurance** - coverage for "Failed Donation Claim(s)."

**$25,000 Business Travel** - coverage for Business Travel Accidental Death Benefit to the Named Insured if a Director or Officer suffers an "injury" while traveling on a common carrier for business.

# Crisis Management

**$25,000 Crisis Management** - coverage for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis."

The Enhanced Bell and Crisis Management Endorsements will be effective February 2008 for all approved states.



PHILADELPHIA INSURANCE COMPANIES



# Loss Control Notice

Welcome to PIC Loss Control Services.   PIC is familiar with the unique loss control programming needs of your organization and has achieved superior results in this area.  We are committed to delivering quality and timely loss prevention services and risk control products to your organization.  Customer satisfaction through the delivery of these quality professional products to achieve measurable risk improvement results is our goal.  We know the fulfillment of the loss control commitment is not complete until we deliver upon our promises.

Our product specific service capabilities follow on the next few pages. They include a multi-faceted approach to risk management covering safety program development, site audits, and training (including a new interactive web-based training).  We offer a wide range of products and value-added services at no cost to help you achieve your risk management goals.

Please take a moment to register for our website @ *www.losscontrol.com* to gain full access to these resources. Please assign yourself your own username and password.  Your registration request will be processed within two business days.

We look forward to helping to make your insurance program a success.  We are standing by if you have any questions or if we may be of further assistance. Please contact us at:

**Jeffrey M. Collins, AVP & Director**
**Loss Control Department**
**Phone: 610-617-7717**
**E-Mail: jcollins@phlyins.com**


**Mark A. Konchan, Manager**
**Loss Control Department**
**Phone: 610-538-2967**
**E-Mail: mkonchan@phlyins.com**

## Philadelphia Insurance Companies (PIC)
## PHLY Loss Control Services

### About Loss Control Services

- Our Motto
- Our Mission

### Risk Management Resources

- IntelliCorp Records, Inc. (Employment Background Screening and MVR Checks)
- Nonprofit Risk Management Center
- WEMED Loss Assistance Hotline
- AGOSNET: web-enabled EPLI (Employment Practices Liability Insurance) Risk Management Services

### Proprietary Risk Management Services

- Monthly E-Brochures

### Contact Information

 **Philadelphia Indemnity Insurance Company**

(A Stock Company founded in 1927)
One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
1-800-759-4961

# Commercial Lines Policy

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President

Secretary

BJP-190-1 (12-98)

## POLICYHOLDER NOTICE (LOSS ASSISTANCE HOTLINE)

We are pleased to enclose an original copy of your policy.  Please take a moment to review the policy to ensure it meets your needs.

Please feel free to contact our local sales representatives or our customer service unit at 877-GET-PHLY, if you need further assistance.

As a free loss control benefit to our policyholders, Philadelphia Insurance Companies (PIC) has partnered with a nationally recognized law firm Wilson, Elser, Moskowitz, Edelman and Dicker LLP (WEMED), to offer a toll-free **Loss Assistance Hotline**.  The toll-free loss assistance hotline telephone number is **1-877-742-2201**.  You can also contact a WEMED attorney online at either of the following internet addresses: **http://www.wemed.com/pic/ or <http://www.losscontrol.com>** . This hotline provides policyholders 2 free hours of legal consultation with a knowledgeable attorney on any matter that could potentially result in a claim under your PIC policy.  This loss assistance hotline is **NOT** a loss reporting hotline.  To report a claim, read the claim reporting instructions in your Policy, or ask your agent.  If you have questions concerning the loss assistance hotline, please contact us at 1-800-759-4961 x7717.

The Philadelphia Insurance Companies thanks you for choosing us to meet your insurance needs.


Sincerely,


Philadelphia Insurance Companies



# Philadelphia Indemnity Insurance Company

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004

## COMMON POLICY DECLARATIONS

**Policy Number:** PHSD319209

**Named Insured and Mailing Address:**
LSI Lowery Systems, Inc. dba LSI Teamcen
The Intergrated Business Solutions Group
1329 Horan Dr
Fenton, MO 63026-1939

**Producer:** 5167
GALLAHER-TANGORA-RODES INSURANCE
P.O. BOX 798
MEXICO, MO, 65265

**Policy Period From:** 04/23/2008  **To:** 04/23/2009

at 12:01 A.M. Standard Time at your mailing
address shown above.

**Business Description:** Computer Bureaus/Consultants

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| Miscellaneous Professional | 6,119.00 |
| **Total** | **$  6,119.00** |

FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE
Refer To Forms Schedule

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (01/07)

_____
Countersignature Date

_____
Authorized Representative

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHSD319209

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 1002 | Policyholder Notice (Loss Assistance Hotline) |
| CPD-PIIC | 0107 | Common Policy Declarations |
| PP 0701 | 0701 | Privacy Policy Notice |
| IL0990 | 0108 | Missouri-Disclosure Pursuant to Terrorism Risk Ins Act |

PI-PLSP-001 (08/07)



# Philadelphia Insurance Companies

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania  19004
**610.617.7900    Fax: 610.617.7940**

## *Cover-Pro*<sup>sm</sup>

☒ **Philadelphia Indemnity Insurance Company**          ☐ **Philadelphia Insurance Company**

## DECLARATIONS

**Policy Number:** PHSD319209

**NOTICE:  THIS IS A CLAIMS MADE POLICY.  PLEASE READ THIS POLICY CAREFULLY.  THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR INVESTIGATION AND LEGAL COSTS.  FURTHER NOTE THAT AMOUNTS INCURRED FOR SUCH COST SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT**

Item    1.    **Named Entity** and Address:

LSI Lowery Systems, Inc. dba LSI Teamcen
The Intergrated Business Solutions Group
1329 Horan Dr
Fenton, MO 63026-1939

Item    2.    **Policy Period**:  From: 04/23/2008 To: 04/23/2009
(12:01 A.M. Standard Time)

Item    3.    Premium:          $        6,119.00

Item    4.    Limits of Liability:  (A) $      1,000,000        Each **Claim**, including **Claim Expense**

(B) $      1,000,000        Annual Aggregate, including **Claim Expense**

Item    5.    Deductible:          $          7,500        Deductible per **Claim**

Item    6.    Retroactive Date:  04/23/1999

Item    7.    Continuity Date:  04/23/2007

Item    8.    Additional Premium for Supplemental Extended Reporting Period: $

PI-PLSP-001 (08/07)

Item   9.   **Named Entity's** Profession:
Computer Bureaus/Consultants

Endorsements:


By accepting this Policy, the **Insured** agrees that the statements in the application are personal representations, that they shall be deemed material, and that this Policy is issued in reliance upon the truth of such representations.


| Authorized Representative | Countersignature | Countersignature Date |

Philadelphia Indemnity Insurance Company

Form Schedule – Miscellaneous Professional Liability

**Policy Number:** PHSD319209

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| Bell Endt and Crisis Mgmt | 0208 | Bell Endorsement and Crisis Management |
| PI-PLSP-001 | 0807 | Cover Pro Policy Declarations Page |
| PI-BELL-1 MO | 0907 | Bell Endorsement |
| PI-CME-1 | 0807 | Crisis Management Enhancement Endorsement |
| PI-PLSP-002 | 0807 | Cover Pro |
| PI-PLSP-010 | 0807 | Nuclear Energy Liability Exclusion |
| PI-PLSP-102 | 0807 | Bankruptcy/Insolvency Exclusion |
| PI-PLSP-145 | 0807 | Computer/Technology Consultant Pro-Pak Elite |
| PI-PLSP-176 | 0807 | Additional Premium For Supplemental ERP |
| PI-ARB-1 MO | 0305 | Binding Arbitration |
| PI-DEF-NOTICE-MO | 0401 | Defense Within Limits |
| PI-Notice-MO | 0401 | Important Notice |
| PI-PLSP-MO-1 | 0807 | Missouri Amendatory Endorsement |

PP-0701 07-01

# PHILADELPHIA INSURANCE COMPANIES

## PRIVACY POLICY NOTICE

Philadelphia Insurance Company & Philadelphia Indemnity Insurance Company

The Philadelphia Insurance Companies values your privacy and we are committed to protecting personal information that we collect during the course of our business relationship.

The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information we collect and how it may be disclosed. This does not reflect a change in the way we do business or handle your information.

## Information We Collect:

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

## Information We Disclose:

We will only disclose the information described above, as permitted by law, to our affiliates and non-affiliated third parties when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker;
- Parties who perform a business, professional or insurance function for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, other insurers, medical care institutions and attorneys who need the information to investigate, defend or settle a claim involving you;
- Insurance regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes.
We do not disclose the personal information of persons who have ceased to be our customers.

## Protection of Information:

The Philadelphia Insurance Companies maintains physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

## How to Contact Us:

Feel free to call or write to us for additional information.

Philadelphia Insurance Companies
One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
(877)-438-7459

POLICY NUMBER: PHSD319209

IL 09 90 01 08

# MISSOURI – DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

**Terrorism Premium (Certified Acts) $ 0**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

**NOTE: The premium above is for certain losses resulting from certified acts of terrorism as covered pursuant to coverage provisions, limitations and exclusions in this policy. You should read the definition in your policy carefully, but generally speaking, "certified" acts of terrorism are acts that exceed $5 million in aggregate losses to the insurance industry and which are subsequently declared by the U.S. Secretary of the Treasury as a certified terrorist act under the Terrorism Risk Insurance Act. Some losses resulting from certified acts of terrorism are not covered. Read your policy and endorsements carefully.**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

© ISO Properties, Inc., 2007

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007                    IL 09 90 01 08        □

PI-BELL-1 MO (09/07)

<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

# BELL ENDORSEMENT



Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

**I.    SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Insurance or Liability and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| | |
|---|---|
| Identity Theft Expense | $25,000 |
| Terrorism Travel Reimbursement | $25,000 |
| Emergency Real Estate Consulting Fee | $25,000 |
| Temporary Meeting Space Reimbursement | $25,000 |
| Workplace Violence Counseling | $25,000 |
| Kidnap Expense | $50,000 |
| Image Restoration and Counseling | $25,000 |
| Donation Assurance | $25,000 |

**II.    CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

**B.  Limits of Liability or Limits of Insurance**

1.    When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limit of Limits of Liability or Limits of Insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, If this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum Limits of Liability or Limit of Insurance under all such coverage parts or policies combined shall not exceed the highest applicable Limits of Liability or Limit of Insurance under any one coverage part or policy.

PI-BELL-1 MO (09/07)

   2.  Limits of Liability or Limits of Insurance identified in Clause I. above are not excess of, but are in addition to the applicable Limits of Insurance stated in the Declarations.

### C.  Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III. ADDITIONAL COVERAGES

### A.  Identity Theft Expense

We will reimburse any present Director or Officer of the Named Insured, for "Identity Theft Expenses" incurred as the direct result of any "Identity Theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the Insured's first policy with the Company.   The limit for this coverage will be $25,000 per policy period for all Insureds combined.  No deductible applies to this coverage.

### B.  Terrorism Travel Reimbursement

The Company will reimburse any present Director or Officer of the Named Insured in the event of a "Certified Act of Terrorism" during the policy period which necessitates that he/she incurs "Emergency Travel Expenses."  The limit for this coverage will be $25,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### C.  Emergency Real Estate Consulting Fee

The Company will reimburse the Insured any realtor's fee or real estate consultant's fee necessitated by the Insured's need to relocate due to the "Unforeseeable destruction" of the Insured's principal location listed on the Declarations page during the policy period.  The limit for this coverage will be $25,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### D.  Temporary Meeting Space Reimbursement

The Company will reimburse the Insured for rental of meeting space which is necessitated by the temporary unavailability of the Insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period.  Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy.  The limit for this coverage will be $25,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### E.  Workplace Violence Counseling

In the event that an incidence of "workplace violence" occurs at any of the Insured's premises during the policy period, the Company will reimburse the Insured for expenses incurred for the emotional counseling of employees of the Insured, during the policy period.  The limit for this coverage will be $25,000 per policy period for all Insureds combined. No deductible applies to this coverage.

### F.  Kidnap Expense

The Company will pay on behalf of any Officer or Director of the Insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner", parent or child during the policy period, subject to a limit of $50,000 each policy period, but not subject to any

deductible.  Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.  fees and expenses of an independent negotiator or consultant retained with prior approval of the Company;

2.  interest on any loan taken by the Named Insured to pay Damages covered under this policy; provided, however, that the Company shall not be liable for any interest accruing prior to thirty (30) days preceding the date of such payment, nor subsequent to the date of reimbursement from the Company for any portion of damages recoverable under this policy;

3.  costs of travel and accommodations incurred by the Named Insured which become necessary due to the applicable kidnapping;

4.  the reward paid by the Named Insured, which is pre-approved by the Company, to an informant for information not otherwise available which leads to the arrest and conviction of persons responsible for any damages under this Policy; and

5.  current salary to an Officer or Director of the Insured who is kidnapped; provided, however, that the employee shall be held for more than thirty (30) days.  Salary shall be paid for a period commencing upon abduction and ceasing upon the earliest of either the release of the employee or discovery of the death of the employee, or 120 days after the Company receives the last credible evidence that the employee is still alive, or twelve (12) months after the date of kidnapping, or the exhaustion of the kidnap expense limit, whichever comes first.

## G. Image Restoration and Counseling

The Company shall reimburse to the Insured expenses incurred for image restoration and counseling arising out of "Improper Acts" by any natural person Insured up to a limit of $25,000 per policy period for all Insureds combined.  Covered expenses are limited to:

1.  the costs of rehabilitation and counseling for the accused natural person Insured provided the natural person Insured is not ultimately found guilty of criminal conduct, said reimbursement to occur after acquittal of the natural person Insured;

2.  the costs, charged by a recruiter or expended on advertising, of replacing an Officer as a result of "Improper Acts"; and

3.  the costs of restoring the Named Insured's reputation and consumer confidence through image consulting.

No deductible applies to this coverage.

## H. Donation Assurance

The Company shall reimburse the insured for "Failed Donation Claim(s)". The limit for this coverage will be $25,000 per policy period for all Insureds combined.  No deductible applies to this coverage.

With respect to any "Failed Donation Claim", it is further agreed as follows:

1.  the donor must never have been in bankruptcy, nor have filed for bankruptcy/reorganization prior to the time said pledge was made to the Insured;

PI-BELL-1 MO (09/07)

2. for non-cash donations, payment by the Insurer of a "Failed Donation Claim" shall be based on the fair market value of said non-cash donation at the time of the "Failed Donation Claim;"

3. in the case of unemployment/incapacitation of a natural person donor and as a condition of payment of the "Failed Donation Claim;"

   (a) neither the natural person donor nor the Insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date and;

   (b) the donor shall be unemployed for at least 60 days prior to the Insurer making payment;

4. no coverage shall be afforded for a written pledge of funds or other measurable tangible property to the Insured dated prior to the policy period;

5. a donation amount which is to be collected by the Insured over more than a 12 month period shall be deemed a single donation.

## IV. Definitions

A. "Certified Act of Terrorism", whenever used in this endorsement will mean any act so defined under the Terrorism Risk Insurance Act of 2002.

B. "Domestic Partner", whenever used in this endorsement means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the Named Insured.

C. "Emergency Travel Expenses", whenever used in this endorsement will mean:

   1. hotel expenses incurred which directly result from the cancellation of a scheduled transport, by train or air, by a commercial transportation carrier resulting directly from and within forty-eight hours of a "Certified Act of Terrorism;" and

   2. the increased amount incurred in air or train fare which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "Certified Act of Terrorism."

D. "Failed Donation Claim", whenever used in this endorsement will mean written notice to the Insured during the Policy Period of:

   1. the bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable tangible property to the Insured;

   2. the unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable tangible property to the Insured.

E. "Identity Theft ", whenever used in this endorsement means the act of knowingly transferring or using, without lawful authority, a means of identification of any Officer or Director (or spouse thereof) of the Named Insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

F. "Identity Theft Expenses", whenever used in this endorsement means:

1.   costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2.   costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

3.   loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

G.   "Improper Acts", whenever used in this endorsement means any actual or alleged act of:

1.   sexual abuse;

2.   sexual intimacy;

3.   sexual molestation; and/or

4.   sexual assault;

committed by an Insured against any natural person who is not an Insured. Such "Improper Acts" must have been committed by the Insured while in his or her capacity as an insured.

H.   "Injury", whenever used in this endorsement means any physical damage to the body caused by violence, fracture or an accident that results in physical damage or hurt.

I.   "Unforeseeable Destruction", whenever used in this endorsement means damage resulting from a "Certified Act of Terrorism", fire, crash or collapse which renders all of the Insured's primary office completely unusable.

J.   "Workplace violence", whenever used in this endorsement means any intentional use of or threat to use deadly force by any natural person, with intent to cause harm and that results in bodily "injury" or death of a member of the Insured or any other natural person while on the Insured's premises.

PI-CME-1 (08/07)

<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

# CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement:  1) The words  "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  2) The words "we", "us" and "our" refers to the company providing this insurance .

**I.   SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                    $25,000

**II.  CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.  All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B.  Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C.  Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III. ADDITIONAL COVERAGES**

A.  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies.  The amount of such reimbursement is limited as described in Section II, B–Limits of Liability or Limits of Insurance.  No other obligation or liability to pay sums or perform acts or services is covered.

B.  We will reimburse only those "crisis management emergency response expenses" which

PI-CME-1 (08/07)

are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six months of the date the "crisis" was initiated.

## IV. Definitions

A.     "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

B.     "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm".  However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

C.     "Crisis management firm" means any service provider you hire that is acceptable to us.  Our consent will not be unreasonably withheld.

D.     "Incident" means an accident or other event resulting in death or serious bodily injury to three or more persons.  "Incident" shall also mean the accidental discharge of pollutants.

E.     "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

PI-PLSP-002 (08/07)

# Cover-Pro<sup>sm</sup>

## PROFESSIONAL LIABILITY INSURANCE POLICY

## <u>THIS IS A CLAIMS MADE POLICY - PLEASE READ IT CAREFULLY</u>

In consideration of the payment of the premium and in reliance upon all statements and information furnished to **us** including all statements made in the application form, its attachments and the material incorporated therein, which are incorporated herein and deemed to be a part of this policy, **we** agree as follows:

## I. INSURING AGREEMENTS

### A. Professional Liability Coverage

**We** shall pay on **your** behalf all sums, not exceeding the Limits of Liability and in excess of the applicable Deductible set forth in the Declarations, for which **you** shall become legally obligated to pay as **damages** resulting from any **claim** first made against **you** during the **policy period** or any subsequent extended reporting period arising out of a **wrongful act** committed after the **retroactive date** stated in Item 6. of the Declarations and prior to the end of the **policy period.**

### B. Defense And Settlement

**We,** in **your** name and on **your** behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any **claim** or suit.

**We** shall not settle any **claim** without **your** consent, such consent not to be unreasonably withheld. Should **you** refuse to consent to any settlement recommended by **us,** and acceptable to the claimant, and elect to further contest the **claim, our** liability for such **claim** shall not exceed the amount for which the **claim** could have been settled, including **claim expenses** incurred, up to the date of such refusal, plus 50% of covered **damages** and **claim expenses** in excess of such settlement amount, it being a condition of this insurance that the remaining 50% of such **damages** and **claim expenses** excess of the first settlement amount shall be borne by **you** at **your** own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Deductible amount stated in Item 5. of the Declarations.

**You** shall not admit liability for, or make any voluntary settlement, or incur any costs or expenses in connection with any **claim** except with **our** written consent.

**We** shall not be obligated to pay any **claim** or judgment or **claim expenses** or to defend any suit after the applicable Limits of Liability have been exhausted.

### C. Supplemental Payments

**We** will pay up to two hundred and fifty dollars ($250) per **individual insured** per day for each day any such **individual insured** is required to appear at a trial, hearing or arbitration proceeding involving a **claim** against such **insured,** subject to a five thousand  dollar ($5,000) sublimit of liability ("Trial Sublimit of Liability").  The Trial Sublimit of Liability shall be in addition to the Limits of Liability as shown in Item 4. of the Declarations.

## II. DEFINITIONS

PI-PLSP-002 (08/07)

**THE FOLLOWING WORDS AND PHRASES APPEARING IN BOLD HAVE SPECIAL MEANING WHENEVER USED IN THIS POLICY:**

A.  **Bodily injury** means physical injury, sickness, disease, disability, mental anguish, mental injury or emotional distress sustained by a person, including death resulting therefrom at any time.

B.  **Claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings involving **you** arising from any alleged **wrongful act**.  **Claim** shall also include any request to toll the statute of limitations relating to a potential **claim** involving an alleged **wrongful act**.

C.  **Claim expenses** means fees charged by any lawyer designated by **us** and all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **claim**, if incurred by **us**. **Claim expenses** shall also include:

   1.  Premiums on bonds to release attachments and appeal bonds, limited to that portion of such bonds that does not exceed the Limits of Liability of this policy, but without any obligation by **us** to apply for or furnish such bonds;

   2.  Costs taxed against **you** in any suit except for any contempt citations;

   3.  Interest accruing after the entry of judgment, but only for that portion of the judgment which does not exceed the applicable Limits of Liability,  and only until **we** have tendered to the court or paid to **you our** portion of such judgment as does not exceed **our** Limit of Liability thereon; and

   4.  Reasonable expenses incurred by **you** at **our** request in assisting in the investigation and defense of any **claim**, other than loss of earnings.

   **Claim expenses** shall not include:

   a.  any amounts incurred in defense of any **claim** for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty; or

   b.  salaries, wages, overhead or benefit expenses associated with any **insured** except as specified in Section **I. INSURING AGREEMENTS**, Paragraph **C.** above; or

   c.  salaries, wages, overhead or benefit expenses associated with your employees.

D.  **Continuity Date** means the date listed in Item 7. of the Declarations.

E.  **Damages** means a monetary judgment, award or settlement, including punitive damages or exemplary damages where insurable by law, but does not include the multiple part of multiplied damages, fines, taxes, sanctions or statutory penalties, including those based upon legal fees whether imposed by law, court or otherwise.

F.  **Domestic partner** means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by **you**.

G.  **Individual Insured** means:

1. Any current partner, director, officer, member or employee of **yours** while acting within the scope of their duties as such.

2. Any former or retired partner, director, officer, member or employee of **yours**, but only for those **professional services** rendered on behalf of the **named entity** prior to the date of separation or retirement from such entity(ies).

3. The lawful spouse or **domestic partner** of an **individual insured**, but only for actual or alleged **wrongful acts** of such **individual insured** for which said spouse or **domestic partner** may be liable as the spouse or **domestic partner** of such **individual insured.**

4. The heirs, executors, administrators, assignees, and legal representatives of each **insured** in the event of such **insured's** death, incapacity or bankruptcy as respects the liability of each **insured** as is otherwise covered herein.

H. **Named Entity** means the proprietor, firm or organization specified in Item 1. of the Declarations.

I. **Personal Injury** means wrongful entry or eviction or other invasion of private occupancy, the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

J. **Policy Period** means the period from the inception date of this policy to the expiration date as set forth in Item 2. of the Declarations or such earlier termination date, if any.

K. **Professional Services** means services rendered to others for a fee solely in the conduct of **your** profession as stated in Item 9. of the Declarations.

L. **Property Damage** means physical injury to tangible property, including all resulting loss of use of such property or loss of use of tangible property that is not physically injured.

M. **Retroactive Date** means the date listed in Item 6. of the Declarations.

N. **Subsidiary** means:

1. A corporation or other entity of which the **named entity** owns on or before the inception of the **policy period** more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its **subsidiaries** or the right to elect, appoint or designate more than 50% of such entity's board of directors, trustees, or managers and which is set forth in the application or, if the entity is a limited partnership, the **named entity** or one of its **subsidiaries** must serve as the general partner.

   A corporation or other entity which becomes a **subsidiary** during the **policy period** and whose revenues total less than 15% of the total consolidated revenues of the **named entity** as disclosed by **you** on the most recently completed application as of the inception date of this **policy period.**

2. A corporation or other entity, which becomes a **subsidiary** during the **policy period** other than a corporation or other entity described in Paragraph 1. above, but only upon the condition that within 90 days of its becoming a **subsidiary**, the **named entity** shall have provided **us** with a completed application and all materials requested by **us** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to the addition of such new **subsidiary.** Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named entity** paying when due any additional premium required by **us** relating to such new **subsidiary.** Failure to provide the requested information within the 90 days or failure to pay the additional premium when requested will result in the denial of coverage to said **subsidiary** under this policy.

PI-PLSP-002 (08/07)

A corporation or other entity becomes a **subsidiary** when the **named entity** owns more than 50% of the issued and outstanding voting stock, either directly or indirectly through one or more of its **subsidiaries** or serves as a general partner for a limited partnership.   A corporation ceases to be a **subsidiary** when the **named entity** ceases to own more than 50% of the issued and outstanding voting stock, either directly or indirectly through one or more of its **subsidiaries** or is removed or ceases to act as general partner of a limited partnership.  Coverage for **claims** made against any **subsidiary** or the **insureds** of any **subsidiary** shall only apply to **wrongful acts** of such **subsidiary** or the **insureds** of such **subsidiary** occurring after the effective time that such **subsidiary** became a **subsidiary** and prior to the time that such **subsidiary** ceased to be a **subsidiary**.

**O.   We, us, our** means the insurance company shown in the Declarations (a stock insurance company).

**P.   Wrongful Act** means a negligent act, error, or omission committed or alleged to have been committed by **you** or any person for whom **you** are legally responsible in the rendering of **professional services.  Wrongful Act** shall include **personal injury** arising out of the rendering of **professional services**.

**Q.   You, your, insured** means:

1. The **named entity**.

2. Any **subsidiary**.

3. Any independent contractor while acting on **your** behalf but solely as respects the provision of **professional services**.

4. Any **individual insured**.

## III.  EXCLUSIONS

**THIS POLICY DOES NOT APPLY TO ANY CLAIM OR CLAIM EXPENSES:**

A. arising out of, resulting from, based upon or in consequence of, any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; however, **we** will defend **suits** alleging the foregoing until there is a judgment, final adjudication, adverse admission, plea *nolo contendere* or no contest or finding of fact against **you** as to such conduct.

B. for **bodily injury** or **property damage**.

C. arising out of any costs of corrections, costs of complying with non-pecuniary relief, fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy may be construed.

D. arising out of any Disciplinary Proceeding against any **insured**, however, **we** will defend **you** for said Disciplinary Proceeding up to a sublimit of liability ("Disciplinary Proceeding Sublimit") of ten thousand dollars ($10,000).  The Disciplinary Proceeding Sublimit shall be part of, not in addition to, the Limits of Liability as shown in Item 4. of the Declarations and shall no way serve to increase the Limits of Liability.  Defense for disciplinary proceedings will still be subject to all other terms and provisions in this policy.

PI-PLSP-002 (08/07)

E.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any failure to effect or maintain any insurance or bond.

F.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any infringement of copyright, patent, trademark service mark, trade name, or misappropriation of ideas or trade secrets.

G.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any violation of the Securities Exchange Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or Securities Law or any rules, regulations or amendments issued in relation to such acts, or any similar state, federal or foreign statutes or regulations.

H.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any express warranties or guarantees or any liability **you** assume under contract unless **you** would have been legally liable in the absence of such contract.

I.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **claim** brought by any **insured** against another **insured.**

J.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any pending or prior litigation as of the **continuity date** of this policy, as well as all future **claims** or litigation based on the pending or prior litigation derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

K.  alleging, arising out of, resulting from, based upon or in consequence of, directly or indirectly, any employment practices or any discrimination against any person or entity on any basis, including but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, sex, sexual orientation or pregnancy.

L. arising out of, resulting from, based upon or in consequence of, directly or indirectly, any discharge, dispersal, release or escape of any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals and waste (including, but not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials) into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any direction, request or voluntary action to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.

M.   arising out of, resulting from, based upon or in consequence of, directly or indirectly, any services as an attorney, accountant, actuary, tax preparer, tax consultant, real estate broker, securities broker, securities dealer, registered representative of a securities broker or dealer, financial planner, nurse, doctor of medicine, veterinary medicine or dentistry, architect or engineer.

N.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **professional services** performed for any entity in which any **insured** is a principal, partner, officer, director or owns or controls more than three percent (3%) of the issued and outstanding stock of such entity.

O.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any disputes involving **your** fees or charges.

P.  arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **wrongful act** committed prior to the **policy period** and subsequent to the **retroactive date** for which you gave notice under any prior insurance policy or which you had any basis to believe might reasonably be expected to give rise to a **claim** under this Policy

No **wrongful act** of any **individual insured** nor any fact pertaining to any **individual insured** shall be

PI-PLSP-002 (08/07)

imputed to any other partner, director, officer or employee for the purposes of determining the applicability of Exclusion **A** above.

## IV. LIMITS OF LIABILITY

Regardless of the number of (a) **insureds** under this policy, (b) persons or entities who allege **damages** or (c) **claims** made or suits brought, **our** liability is limited as follows:

**A.** **We** shall be liable to pay that portion of any **damages** and **claim expenses** in excess of the applicable Deductible as stated in the Declarations for any one **claim** up to the Limits of Liability as stated in Item 4. of the Declarations. A Deductible shall apply to each and every **claim**, including **claim expenses**, and such Deductible shall be borne by **you**. The Deductible shall be uninsured and be at **your** own risk.

**B.** **Our** maximum aggregate liability for all **damages** and **claim expenses** arising out of all **claims** made during the **policy period** shall be the Limit of Liability stated in the Declarations. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the aggregate Limit of Liability provided by this policy as stated in Item 4. of the Declarations.

**C.** **Claims** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **claim** and shall be considered first made during the **policy period** or the Extended Reporting Period (if applicable), of the policy in which the earliest **claim** arising out of such act(s) or circumstance(s) was first made and all **damages** and **claim expenses** shall be subject to the same Each **Claim** Limit of Liability.

## V. GENERAL CONDITIONS

### A. Policy Territory:

This policy shall extend to any **wrongful act** committed anywhere in the world.

All premiums, limits, retentions, **damages**, **claim expenses** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **damages** or **claims expenses** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **damages** or **claims expenses** is due, respectively.

### B. Notice and Claim Reporting Provisions:

Notice hereunder shall be given by **you** or on **your** behalf in writing to **us** at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004 Attn: Claims Department.

**1.** **You** shall, as a condition precedent to **our** obligations under this policy, give written notice to **us** as soon as practicable during the **policy period**, or during the Extended Reporting Period (if any) of any **claim** made against **you**.

**2.** If during the **policy period**, or during the Extended Reporting Period (if any), but not during the Automatic Extension, **you** shall become aware of any circumstance which could reasonably be expected to give rise to a **claim**, **you** shall give written notice to **us** regarding all particulars of said incident as soon as practicable after **you** become aware of said circumstance. Such written notice of any circumstance must include:

    **a.**    the specific **wrongful act**; and

    **b.**    the **damages** which have or may result from such **wrongful act**; and

    **c.**    the circumstances by which **you** first became aware of such **wrongful act**.

Any **claim** then arising out of such **wrongful act** will be considered to have been first made at the time of the original notice.

**C. Extended Reporting Period:**

1.  If **we** or **you** cancel or refuse to renew this policy for reasons other than non-payment of premium, **we** will provide to **you** a 60 day Automatic Extension of the coverage granted by this policy, at no additional charge, for any **claim** first made against **you** and reported to **us** during the 60 day extension period but only as respects **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal.  In the event you purchase replacement coverage for this policy or a Supplemental Extended Reporting Period under **2.** below, said 60 day Automatic Extension period will terminate upon the effective date of said replacement coverage or Extended Reporting Period.

2.  If **we** or **you** cancel or refuse to renew this policy for reasons other than non-payment of premium, **you** shall have the right to purchase, for the appropriate additional payment as listed in Item 8. of the Declarations, a Supplemental Extended Reporting Period of a duration and for a premium as described on the Declarations. This extension will provide coverage granted by this policy for any **claim** first made against **you** and reported to **us** during the Supplemental Extended Reporting Period. This Supplemental Extended Reporting Period only applies to **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal.  **You** must apply for this extension in writing accompanied by payment of the appropriate premium prior to the expiration of the 60 day Automatic Extension period under **1.** above.

3.  All premium paid with respect to an extension period shall be deemed to be fully earned as of the first day of the extension period. For the purpose of this clause, any change in premium, retention, Limits of Liability or other terms on renewal shall not constitute a refusal to renew.

4.  Limits of Liability available during any Extended Reporting Period shall not exceed the balance of the Limits of Liability in effect at the time the policy terminated.

5.  In the event similar insurance is in force covering any **claims** first made during the 60 day extension period or during any Extended Reporting Period, coverage provided by this policy shall be excess over any such other insurance

**D. Deductible:**

It is **your** responsibility to pay the Deductible amount as stated in Item 5. of the Declarations as the result of each **claim**.  **We** may pay part of or all of the Deductible amount to effect a settlement of any **claim**, however, upon notification of any such action taken, **you** shall promptly reimburse **us** for all of the Deductible amount as has been paid by **us**.

**E. Your Duties in the Event of a Claim:**

1.  Pursuant to **B.  Notice and Claim Reporting Provisions**, Paragraph **1.** above, **you** shall give written notice containing particulars sufficient to identify the **insured**, time, place and underlying circumstances of the **claim** to **us**.

2. **You** shall admit no liability, make no payments, assume no obligation and incur no expense related to such **claim** without **our** written consent.

3. When a **claim** is made against **you**, **you** shall immediately forward to **us** every demand, notice, summons, or other process received by **you** or **your** representatives.

4. **You** shall cooperate with **us** and, upon **our** request, assist in making settlements and in the conduct of suits. **You** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and in obtaining the attendance of witnesses.

5. **You** shall not demand or agree to arbitration of any **claim** without **our** written consent.  Such consent shall not be unreasonably withheld.

F. **Subrogation**:

If **we** pay any amount hereunder as **damages, claim expenses** or any combination thereof, **we** shall be subrogated to **your** rights of recovery against any person, firm or organization. **You** shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. **You** shall not waive or prejudice such rights prior to or subsequent to any **claim**.

G. **Changes**:

Notwithstanding anything to the contrary, no provision of this policy may be amended, waived or otherwise changed except by endorsement issued by **us** to form part of this policy.

H. **Action Against Us**:

1. No action shall lie against **us** unless, as a condition precedent thereto, there shall have been compliance with all terms of this policy, and until the amount of **your** obligation to pay shall have been finally determined either by judgment entered in a court of law against **you** or by **your** written agreement with the claimant or claimant's legal representative and **us**.

2. Any person or the legal representatives thereof who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join **us** as a party to any action against **you** to determine **your** liability, nor shall **we** be impeded by **you** or their legal representatives. **Your** bankruptcy or insolvency or that of **your** successors in interest shall not relieve **us** of **our** obligations hereunder.

I. **Change in Control**:

If during the **policy period**:

1. the **named entity** merges into or consolidates with another entity such that the **named entity** is not the surviving entity; or

2. another entity, person, or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the rights to vote for the election of the **named entity's** directors;

(either of the above events hereinafter referred to as the "Transaction") then coverage shall continue until the later of the termination of the **policy period** or such other date to which **we** may agree, but only with respect to **wrongful acts** which occurred prior to the Transaction and are otherwise covered by this policy and premium shall be considered fully earned.

PI-PLSP-002 (08/07)

**J. Cancellation or Non-Renewal:**

1. This policy may be canceled by the **named entity** by surrender thereof and selection of a future date to **us** at the address stated in the Declarations or by mailing to **us** written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by **you**, **we** shall retain the customary short-rate portion of the premium.

2. The policy may be canceled by **us** by mailing to the **named entity** at the address stated in the Declarations written notice stating when, not less than forty-five (45) days thereafter or ten (10) days in the case of cancellation for non-payment of premium or Deductible, such cancellation shall become effective. If the policy is canceled by **us**, earned premium shall be computed pro-rata.

3. In the event **we** refuse to renew this policy, **we** shall mail to the **named entity**, at the address stated in the Declarations, not less than forty-five (45) days prior to the expiration of this policy, written notice of non-renewal. Such notice shall be conclusive on all **insureds**.

4. The mailing of Notice of Cancellation or Non-Renewal as aforementioned shall be sufficient notice of the intent to cancel or non-renew. The effective date of cancellation or non-renewal specified in the notice shall terminate this **policy period**.

**K. Conformity to Statutes:**

Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

**L. Assignment:**

Assignment of interest under this policy shall not bind **us** unless **our** consent is endorsed hereon.

**M. Authorization Clause:**

By acceptance of this policy, **you** agree that the statements in the application are **your** agreements and representations and that this policy is issued in reliance upon the truth of such representations. This policy embodies all existing agreements between **you** and **us** relating to this insurance.

**N. Other Insurance:**

This insurance is excess over any other valid and collectable insurance available to **you** except as respects such insurance written to apply specifically in excess of this insurance.

**O. Liability Coverage Disputed and Reservation of Rights:**

If a controversy or dispute arises with regard to whether coverage exists with respect to a **claim** submitted by **you** under the coverage sections of this policy, **we** may elect to provide a defense under a Reservation of Rights whereby **we** reserve **our** rights to deny and reject any **claim** for **damages**. In the event it is finally established by judgment or agreement that **we** have no liability with respect to such a **claim**, **you** shall reimburse **us** upon demand all sums and monies paid by **us** to defend and/or settle such **claim**.

**P. False or Fraudulent Claims:**

If any **insured** shall commit fraud in presenting any **claim** as regards amounts or otherwise, this insurance shall become void as to such **insured** from the date such fraudulent **claim** is presented.

**Q. Headings**

The descriptions in the headings of this policy and any endorsements attached hereto are solely for convenience, and form no part of the terms and conditions of coverage.

**IN WITNESS WHEREOF, WE HAVE CAUSED THIS POLICY TO BE SIGNED BY OUR PRESIDENT AND SECRETARY.   THIS POLICY SHALL NOT BE VALID UNLESS COUNTERSIGNED ON THE DECLARATIONS PAGE BY OUR DULY AUTHORIZED REPRESENTATIVE.**

PI-PLSP-010 (08/07)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## **NUCLEAR ENERGY LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

**COVER-PRO**<sup>sm</sup>

In consideration of the premium paid, it is agreed that this policy does not apply to any **claim** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **bodily injury** or **property damage** resulting from radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, "source material", "special nuclear material" and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law.

All other terms and conditions of this policy remain unchanged.

Page 1 of 1

PI-PLSP-102 (08/07)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BANKRUPTCY/INSOLVENCY EXCLUSION

This endorsement modifies insurance provided under the following:

**COVER-PRO**[sm]

In consideration of the premium paid, it is agreed that this policy does not apply to any **claim** arising out of, based upon, or attributable to:

1. the bankruptcy, insolvency or financial failure of the **Insured**; or
2. the **Insured's** seeking protection under federal bankruptcy laws (or any similar laws); or
3. the bankruptcy, insolvency or financial failure of any entity with whom the **Insured** transacts business.

All other terms and conditions of this policy remain unchanged.

PI-PLSP-145 (08/07)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## COMPUTER/TECHNOLOGY CONSULTANT PRO PAK ELITE

This endorsement modifies and is subject to the insurance provided under the following:

**COVER-PRO<sup>sm</sup>**

This policy is amended as follows:

**A.  COVERED SERVICES**

The term **Computer Consultant** or **Technology Consultant** as stated in Item 9. of the Declarations is defined as follows:

**Computer Consultant** and **Technology Consultant** both mean an individual or firm retained by a third party for the purpose of:

**1.**  analysis of operating problems and client needs associated with computer hardware and software;

**2.**  creation, recommendation, installation and/or implementation of computer hardware and software;

**3.**  customization of, servicing of and monitoring of computer hardware and software; and

**4.**  training of personnel in the utilization of computer hardware and software.

**Unauthorized access** means a third party's access to a computer, computer system, or computer network, with authorization or exceeding authorization.

**B.  DEFENSE COSTS IN ADDITION TO THE LIMIT**

Section **IV. LIMITS OF LIABILITY**, is deleted and replaced with the following:

Regardless of the number of (a) **insureds** under this policy, (b) persons or entities who allege **damages** or (c) **claims** made or suits brought, **our** liability is limited as follows:

**1.**  **We** shall be liable to pay that portion of any **damages** in excess of the applicable Deductible as stated in the Declarations for any one **claim** up to the Limits of Liability as stated in Item 4. of the Declarations.  A Deductible shall apply to each and every **claim**, including **claim expenses**, and such Deductible shall be borne by **you**.  The Deductible shall be uninsured and be at **your** own risk.

**2.**  **Our** maximum aggregate liability for all **damages** arising out of all **claims** made and  reported during the **policy period** shall be the Limit of Liability stated in the Declarations as Aggregate. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by this    policy as stated in Item 4. of the Declarations.

PI-PLSP-145 (08/07)

3. **Claims** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **claim** and shall be considered first made during the **policy period** or the Extended Reporting Period (if applicable), of the policy in which the earliest **claim** arising out of such act(s) or circumstance(s) was first made and all **damages** shall be subject to the same Each **Claim** Limit of Liability.

4. Payment by **us** of **claim expenses** incurred with any **claim**, shall not serve to reduce the Limit of Liability stated in Item 4. of the Declarations.

## C. ADDITIONAL EXCLUSIONS

Section **III. EXCLUSIONS**, is amended to include the following:

1. **THIS POLICY ALSO DOES NOT APPLY TO ANY CLAIM OR CLAIM EXPENSES ARISING OUT OF:**

   **R.** Any mechanical or electrical failure, including any power interruption, surge, brownout or blackout;

   **S.** The failure to prevent **unauthorized access** to, or use of an electronic system or computer program, unless such **unauthorized access** or use is a result of **your wrongful act**;

   **T.** Any **claim** arising out of the failure of any real, personal or intangible property to have at any point or points in time any guaranteed economic value.

   **U.** Any **claim** arising out of the transfer of funds, monies, or securities to or from any account or institution or guaranteeing of the availability of funds; or

   **V.** Any **claim** based upon or arising out of incorrect description of any article or commodity or any mistake in advertised price or any false, misleading, deceptive or fradulent advertising.

   **W.** Any **wrongful act** committed with the knowledge that it was a **wrongful act**.

   **X.** Any **claim** arising out of or connected with the performance or failure to perform services for any person or entity:

   **(1)** which is owned by or controlled by any **insured**; or
   **(2)** which owns or controls any **insured**; or
   **(3)** which is affiliated with any **insured** through any common ownership or control; or,
   **(4)** in which any **insured** is a director, officer, partner or principal stockholder.

2. **THIS POLICY ALSO DOES NOT APPLY TO ANY CLAIM OR CLAIM EXPENSES FOR:**

   **A.** Any sale or defect of any non-customized commercially available computer software or hardware products.

PI-PLSP-176 (08/07)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL PREMIUM FOR SUPPLEMENTAL EXTENDED REPORTING PERIOD

This endorsement modifies and is subject to the insurance provided under the following:

**COVER-PRO<sup>sm</sup>**

The Declarations are amended as follows:

Item 8. Is deleted in its entirety and replaced with the following:

Item 8.     The Additional Premium for Supplemental Extended Reporting Period shall be as follows:

| | |
|---|---|
| 12 months: | 75% of Annual Premium |
| 24 months: | 125% of Annual Premium |
| 36 months: | 150% of Annual Premium |
| 48 months: | 175% of Annual Premium |
| 60 months: | 200% of Annual Premium |
| Unlimited: | 285% of Annual Premium |

All other terms and conditions of this policy remain unchanged.

PI-ARB-1 MO (3/05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY..

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer' mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, both parties may, by mutual consent, agree in writing to arbitration of the disagreement.

If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, both parties must request that selection be made by a judge of a court having jurisdiction. Each party will:

     1. Pay the expenses it incurs; and

     2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

Includes copyright material of the Insurance Services Office, Inc. used with its permission.

PI-DEF-NOTICE-MO

# DISCLOSURE NOTICE

## DEFENSE WITHIN LIMITS

I UNDERSTAND AND ACKNOWLEDGE THAT THE ATTACHED POLICY CONTAINS A DEFENSE WITHIN LIMITS PROVISION WHICH MEANS THAT THE DEFENSE COSTS WILL REDUCE OUR LIMITS OF INSURANCE AND MAY EXHAUST THEM COMPLETELY.  SHOULD THAT OCCUR, WE SHALL BE LIABLE FOR ANY FURTHER LEGAL DEFENSE COSTS AND DAMAGES.

Signature_____
(President, Chairman or Executive Director)

PI-Notice-MO (4-01)

# IMPORTANT NOTICE

To obtain information or make a complaint:

1.   You may call Philadelphia Indemnity Insurance Company's toll-free telephone number for information or to make a complaint at

**1-877-438-7459**

2    You may write to Philadelphia Indemnity Insurance Company at our principal place of business:

Philadelphia Indemnity Insurance Company
One Bala Plaza, Suite 100
Bala Cynwyd, PA 19004
(610) 617-7900
FAX # (610) 617-7940

3.   **ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

PI-PLSP-MO-1(08/07)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MISSOURI AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COVER-PRO**sm

Section **V. GENERAL CONDITIONS**, Paragraph **J. Cancellation or Non-Renewal**, is deleted and replaced with the following:

**J. Cancellation or Non-Renewal:**

1.  This policy may be canceled by the **named entity** by surrender thereof and selection of a future date to **us** at **our** address stated in the Declarations or by mailing to **us** written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by **you, we** shall retain the customary short-rate portion of the premium.

2.  The policy may be canceled by **us** by mailing to **you** at the address stated in the Declarations advance written notice.  Notice shall be given at least:

    a.  Ten (10) days before the effective date of cancellation, if **we** cancel for nonpayment of premium or Deductible;

    b.  Forty-five (45) days before the effective date of cancellation, if **we** cancel for:  fraud or material misrepresentation affecting the policy or in the presentation of a **claim** under the policy; a violation of any of the terms or conditions of the policy; any changes in conditions after the effective date of the policy which have materially increased the hazards originally insured; insolvency of the insurer, or involuntary loss of reinsurance for the policy,

    c.  Sixty (60) days before the effective date of cancellation, if **we** cancel for any other reason.

    If the policy is canceled by **us**, earned premium shall be computed pro-rata.

3.  In the event **we** refuse to renew this policy, **we** shall mail to the **named entity**, at the address stated in the Declarations, not less than sixty (60) days prior to the expiration of this policy, written notice of non-renewal. Such notice shall be conclusive on all **insureds**.

4.  The mailing of Notice of Cancellation or Non-Renewal as aforementioned shall be sufficient notice of the intent to cancel or non-renew. The effective date of cancellation or non-renewal specified in the notice shall terminate this **policy period**. Delivery of such notice shall be equivalent to mailing. The Notice of Cancellation or Non-Renewal shall state the reasons for cancellation or non-renewal.